## CHANDLER *v.* MUTUAL LIFE AND INDUSTRIAL ASSOCIATION OF GEORGIA.

1. Declarations of a person since deceased, against his interest, and not made with a view to pending litigation, are admissible in evidence in any case.
2, 3, 4. The admission of immaterial evidence, without harmful effect, is not cause for a new trial.
5. One has no insurable interest in the life of his brother-in-law merely because of the existence of such relationship.
6. "When a portion of a charge, which is complained of generally, contains several distinct propositions and one or more of the same is correct in the abstract, then the general assignment of error is not good and will not be further considered, because it in effect improperly alleges that all of such portion is erroneous, and does not show to which of the propositions, the correct or the erroneous, it is intended to take exception."
7. As it manifestly appears that the movant and his counsel, by the exercise of ordinary diligence, could have obtained knowledge, before trial, of the alleged newly discovered evidence, it was not cause for a new trial.

Submitted January 13,—Decided July 20, 1908.

Action on insurance policy. Before Judge Brand. Clarke superior court. February 2, 1907.

*J. A. B. Mahaffey, H. S. West,* and *Shackelford & Shackelford,* for plaintiff.

*E. K. Lumpkin* and *John J. Strickland,* for defendant.

FISH, C. J. C. C. Chandler brought three suits against the Mutual Life and Industrial Association of Georgia, each based upon a separate policy of insurance issued by defendant, insuring the

life of W. R. Yerby for the benefit of the plaintiff. The petitions alleged: The plaintiff was creditor of Yerby, who authorized and directed him to make applications to the defendant for the issuance of the policies sued on, and that plaintiff should be named as the beneficiary therein, for the purpose of protecting and indemnifying him against loss of any portion of his claims of indebtedness against Yerby, in the event of his death. Plaintiff agreed with Yerby and with defendant that, for this purpose, plaintiff would pay Yerby's initiation fees, as well as his annual dues and death assessments on the policies. The policies were issued on July 4, 1903, and Yerby died on June 25, 1905. The defendant pleaded that the policies were obtained by fraud, in that plaintiff himself made the applications for the same, falsely and fraudulently representing to defendant and its agents that Yerby had made them out and signed them, whereas plaintiff had signed the applications without the knowledge or consent of Yerby; and that plaintiff furthermore falsely and fraudulently represented to defendant and its agents that Yerby was in good health and in an insurable condition physically at the time the applications were made and the policies issued, when, as defendant had since discovered, at that time Yerby had for years been a physical wreck, administering morphine constantly to himself, and was otherwise unfit for insurance. Defendant denied that plaintiff was a creditor of Yerby; and further pleaded, in bar of the recovery, that Yerby committed suicide. The plea of suicide, however, was not insisted on. On the trial the three cases were consolidated and tried as one. A verdict was rendered in behalf of the defendant. The plaintiff made a motion for a new trial, which was overruled, and he excepted.

1. A letter written by Yerby to C. B. Chandler on June 10, 1904, was admitted in evidence over the objection of the plaintiff. In the letter was this language: "I repeat that I have not in the last 20 years made, myself, or authorized any one to make applications whatever for insurance of any kind. I have not even discussed the matter, except with Ralph Chandler, whose proposition I positively declined." The court also permitted C. B. Chandler to testify, over plaintiff's objections, that, both before the receipt of the letter and afterwards, Yerby stated to him that he had no insurance on his life; that he had made no applications for any, nor authorized any one to make applications for him, except Ralph

Chandler; that he, Yerby, was not on good terms with C. C. Chandler, and that if he had applied for insurance on his (Yerby's) life, it was without his knowledge or consent. The objections urged against the introduction of this letter and this testimony of C. B. Chandler were, that they were irrelevant and immaterial; that they were not between the parties to the case, were hearsay, and were subsequent to the issuance of the policies. These objections were not meritorious. Without considering whether Yerby had the right to change the beneficiary in the policies, if they were issued as plaintiff contended they were, it is clear that Yerby had at least a contingent interest under them, as the policies contained the following provision: "the claim hereunder to be paid to C. C. Chandler, brother-in-law; . . or if the member insured should survive the aforesaid beneficiary, then to any other beneficiary that may be named by him; . . or in the absence of such named beneficiary, then to his . . administrator or executor." Besides, if the policies were issued as plaintiff contended, it was to Yerby's interest that the indebtedness which he owed the plaintiff should be paid from the proceeds of the same, if he died before paying it himself. So the declarations, written and oral, of Yerby objected to were self-disserving, and for this reason admissible. "Declarations and entries of a person, since deceased, against his interest, and not made with a view to pending litigation, are admissible in evidence in any case." Civil Code, §5181. "Admissions made by a third person against his interest, as to a fact collateral to the main issue between the litigants, but essential to the adjudication of the cause," are received in evidence. Ib. §5191; *Massee-Felton Lumber Co.* v. *Sirmans,* 122 *Ga.* 297 (50 S. E. 92).

2.  Error was assigned upon the admission in evidence of the proofs of the death of Yerby, signed by plaintiff, "on the ground that they were immaterial and irrelevant, and that counsel for defendant had admitted that proper proof of the death had been made." It is not apparent from this ground of the motion how this evidence, granting that it was irrelevant and immaterial, was harmful to plaintiff. It is well settled that the admission of immaterial evidence, the effect of which is harmless, is not cause for a new trial. See collation of cases on this point in 14 Michie's Encyclopedic Digest of Georgia Reports, 414.

3.  One ground of the motion was, "Because the court erred

in admitting the evidence of a number of witnesses to show that W. R. Yerby came to his death by suicide, it being stated by counsel for defendant that the evidence of said witnesses going to show suicide was not to set up the defense of suicide, but to show the condition of Yerby's health. Counsel for plaintiff objected to all the testimony hereinafterwards set out, because it was irrelevant and would tend to prejudice the jury, that it was immaterial and would not illustrate the condition of the health of Yerby. The testimony objected to was as follows: The testimony of J. W. Matthews: 'I saw something that indicated the cause of his death, a wound in the side of the head, supposed to be a pistol wound. I saw the pistol. Mr. Jarrett had it, I think. I did not see how many times it had been fired.' The testimony of Sabe Moon, as follows: 'When they would send for me I never saw him try to kill himself in my life. He would just be a little fractious.'" The testimony of other witnesses, tending to show that Yerby committed suicide, was also set out in this ground of the motion; but the trial judge certified that no objection was made to this other testimony. We do not see wherein the testimony of Moon was hurtful to plaintiff. Nor is it apparent how the testimony of Matthews tended to prejudice the jury. It did not show, or even tend to show, in our opinion, suicide on the part of Yerby, but merely that his death was caused by what seemed to be a pistol wound; and the admission of this testimony, even though irrelevant and immaterial, was apparently harmless and, therefore, not cause for a new trial.

4. The following testimony of Henry Williams was objected to by the plaintiff: "He, Yerby, sent by me to Athens for morphine, and I got it for him and carried it back and gave it to him in a little vial. I do not know a thing in the world about what he did with it." The objections to this testimony were: that it was irrelevant and immaterial; that what the witness testified to "occurred after the policies had been issued, and did not illustrate the condition of his [Yerby's] health at the time the policies were taken out." It does not appear from the testimony objected to that the witness had procured morphine for Yerby after the issuance of the policies; but granting that this point was made by the objection to the testimony, it still does not appear how long after the issuance of the policies the witness procured the morphine for

Yerby. If it was procured immediately thereafter, the testimony might. tend to throw some light upon the condition of Yerby's health at the time the policies were issued. At any rate, we do not think that the admission of this testimony, even if erroneous, was sufficient of itself to cause a new trial to be granted. There was nothing in the policies stipulating against the use of morphine or other narcotics.

5. Complaint was made that the court erred in charging the jury as follows: "The court instructs the jury that one has no insurable interest in his brother-in-law; and in this case if the contracts of insurance were issued to the plaintiff as the brother-in-law of Yerby, pure and simple, then the said contracts of insurance are illegal and the plaintiff can not recover of defendant upon this ground, simply for the reason that in law one has no insurable interest in his brother-in-law." No specific error was assigned upon this charge. The court evidently meant to instruct the jury that plaintiff had no insurable interest in the life of Yerby merely because he was his brother-in-law. This seems apparent from the language of the portion of the charge excepted to; but it is manifest when the next sentence of the charge is considered, which was as follows: "While a valid contract of insurance can not lawfully be taken on the life of another by one who has no insurable interest therein, because it contravenes public policy, yet as one has an insurable interest in his own life, he may lawfully procure insurance thereon for the benefit of another person whose interest he desires to promote. Such a contract can not be defeated for the want of insurable interest in the beneficiary, when it appears that the person whose life was insured acted for himself in good faith to promote the benefit of the beneficiary in taking out the policy. A contract so entered into is in no sense a wagering or speculative one. . . If Yerby acting for himself, in good faith, authorized the plaintiff to make the applications for these policies, and authorized the plaintiff to sign his name to the applications, and then had these policies of insurance taken out on his life, he directing the plaintiff to be the beneficiary therein, then the defendant would be liable to the plaintiff." The court further instructed the jury on the same line. There was, therefore, no merit in this assignment of error.

6. A general assignment of error was made on another long

excerpt from the charge of the court, in which the following language was used: "The evidence introduced upon this subject [suicide] can not be considered by you for the purpose of defense upon the ground of suicide. The defense of suicide is not in this case." This instruction was correct. "When a portion of a charge, which is complained of generally, contains several distinct propositions and one or more of the same is correct in the abstract, then the general assignment of error is not good and will not be further considered, because it in effect improperly alleges that all of such portion is erroneous, and does not show to which of the propositions, the correct or the erroneous, it is intended to take exception." *Anderson* v. *Southern Ry. Co.*, 107 *Ga.* 500 (33 S. E. 644). Of course, this principle applies with peculiar force when, as in the present case, the instructions excepted to contain matter which is clearly correct in the concrete. The quotation which we have made from the portion of the charge excepted to correctly stated the law, as applicable to the facts of the case, relative to the defense of suicide; and hence the rule just cited is directly in point, and the general assignment of error is not good.

7. A ground of the motion was based on the alleged newly discovered evidence of Augusta Yerby, sister of W. R. Yerby, the insured, and sister-in-law of the plaintiff, contained in her affidavit to the effect that her brother had informed her more than once that his life was insured for the benefit of the plaintiff, and that the insurance was satisfactory to him, and deposing to other facts tending to show that Charley Chandler, brother of plaintiff, and Charley's wife, who were not on good terms with plaintiff, endeavored to induce the insured to make statements showing that plaintiff had taken out the insurance without the knowledge or consent of Yerby. Another ground was based on the alleged newly discovered evidence of E. H. Borders, embraced in his affidavit to the effect that on or about July 1, 1903, W. R. Yerby informed deponent that he (Yerby) had authorized plaintiff to take out the insurance policies on his life, payable to plaintiff, and that plaintiff was to pay the premiums thereon, and that the purpose of the insurance was to secure the indebtedness due the plaintiff by Yerby. On the hearing of the motion for a new trial, several affidavits were submitted by the respondent, to the effect that Augusta Yerby was living with her brother, W. R. Yerby, at the time of his death

and for some time previous thereto, and that they lived near the home of the plaintiff, and that immediately after the death of her brother, W. R. Yerby, she went to live with plaintiff as a member of his family and had lived with him continuously since that time, and was so living with him at the time of the trial. There were also submitted by respondent affidavits denying the statements in the deposition of Augusta Yerby as to Charley Chandler and his wife endeavoring to procure statements from Yerby as she had deposed. Respondent also submitted affidavits to the effect that Borders was a close and intimate friend of plaintiff, living in one of plaintiff's houses, next door to him, was present at the trial, was sworn and examined as a witness in the case for the plaintiff, and appeared to take great interest therein. Nothing in denial of these affidavits was submitted by movant.

It is apparent that movant and his attorneys had failed to exercise ordinary diligence, prior to the trial, to obtain this alleged newly discovered evidence. With any sort of diligence, it seems that what Augusta Yerby knew on the subject could have been discovered by movant, as before the death of her brother, W. R. Yerby, she, according to her own affidavit, lived with him, within one hundred yards of the residence of plaintiff, and after his death, in June, 1905, and up to the time of the trial, in April, 1906, she, according to the affidavits introduced by respondent, was a member of the plaintiff's family. *Atlanta Rapid Transit Co.* v. *Young,* 117 *Ga.* 349. The same lack of due diligence on the part of the plaintiff seems apparent in reference to the alleged newly discovered testimony of Borders. Due diligence ought to have enabled the plaintiff to discover what facts helpful to his cause were within the knowledge of his next-door neighbor and intimate friend, especially when plaintiff intended to and did introduce him as a witness upon the trial of the case. This latter circumstance alone is sufficient to show that there was no abuse of discretion on the part of the trial judge in refusing to grant a new trial upon the ground of the motion based upon this alleged newly discovered evidence. *Greer* v. *Rainey,* 120 *Ga.* 290 (47 S. E. 939), and cit.

The grounds of the motion not specifically dealt with by us were either not approved by the trial judge, or are treated as abandoned because not referred to in the brief of counsel for plaintiff in error.

*Judgment affirmed. All the Justices concur.*