35930.   CARTER *et al. v.* STATE OF GEORGIA *et al.*

DECIDED OCTOBER 27, 1955—REHEARING DENIED NOVEMBER 8, 1955.

*John J. Sullivan, Aaron Kravitch,* for plaintiffs in error.

*Edwin Maner, Jr., Andrew J. Ryan, Jr., Solicitor-General,* contra.

TOWNSEND, J. ■ Since a number of the questions presented in this record are raised in more than one way, this decision will in general follow the outline of questions to be determined as set

out in their briefs by able counsel for the plaintiffs in error, rather than passing specifically upon the various facets of the individual assignments of error.

The transfer of this case by the Supreme Court to this court is an adjudication that the prayers for injunction in the intervention are mere surplusage and that there is no equity jurisdiction in this case.

■ The trial court did not err in refusing the prayers of the intervention for a declaratory judgment. "The courts will ordinarily refuse to entertain an action for a declaratory judgment as to questions which are determinable in a pending action or proceeding between the same parties." *Shippen* v. *Folsom*, 200 *Ga.* 58, 59 (7) (35 S. E. 2d 915) quoting from 16 Am. Jur. 295, § 22. The Declaratory Judgment Act cannot be invoked where there is a full and complete remedy without regard to such act, and a declaratory judgment will be of no value to the applicant to guide him in some future action which, without such action, might reasonably jeopardize his interest. *Mayor &c. of Athens* v. *Gerdine*, 202 *Ga.* 197 (42 S. E. 2d 567) ; *Publix-Lucas Theaters, Inc.* v. *City of Brunswick*, 206 *Ga.* 206 (56 S. E. 2d 254).

■ The contention is made that by reason of the charter of the City of Savannah (Ga. L. 1884, p. 294) and certain acts of the legislature having local application to this municipality (Ga. L. 1939, pp. 1296-1297; Ga. L. 1950, p. 2383, Sec. 2 and 3; Ga. L. 1951, p. 2539, Sec. 5) the city should proceed to fully provide water and sewerage facilities within the city limits before extending its resources into the county, and should assess the sewerage costs against the property owners benefited, and that these acts preclude the city from issuing the revenue-anticipation certificates in question. This contention is without merit. Code (Ann. Supp.) Chapter 87-8 sets out a general law according to the acts of 1937 and 1939 (Ga. L. 1937, p. 761 et seq.; Ga. L. 1939, p. 362 et seq.), applicable throughout the State, by which counties, municipalities and other political subdivisions may raise revenue for such projects as is herein contemplated. Further, the Constitution of 1945, (Art. VII, Sec. VII, Par. V; Code, Ann., § 2-6005) authorizing revenue-anticipation obligations contains the following provision: "This authority shall apply only to revenue-anticipation obligations issued to provide funds for the

purchase, construction, extension, repair or improvement of such facilities and undertakings as are specifically authorized and enumerated by said Act of 1937, as amended by said Act of 1939." In *Reed* v. *City of Smyrna*, 201 *Ga.* 228 (7), 237 (39 S. E. 2d 668) it was held that under this enactment "the provisions [of the Revenue Certificate Law of 1937 and the Constitution of 1945] as to Revenue Certificates became a part of the charter of every municipality of this State." In *Dade County* v. *State*, 202 *Ga.* 191, 192 (42 S. E. 2d 439) it was held as follows: "The conclusion that the General Assembly intended that every municipality in the State should have exactly the same power to do all of the acts authorized thereby is easily reached by even a casual reading of the act." The constitutional provisions being a part of the charter of the municipality it necessarily follows that it has the authority to proceed thereunder regardless of other and alternate, or even contradictory, plans which might have been contained in local legislation.

■ A number of assignments of error, and a number of the issues listed by counsel for plaintiffs in error, deal with the question of whether the city has the authority to proceed, in extending existing water and sewerage facilities, to pledge the revenue of the entire system to the payment of these bonds (subject, of course, to the rights of holders of prior issues of validated bonds for the same purpose) without pro-rating the values of the existing and new facilities and pledging only the revenue of such new facilities according to its proportion to the total value. In this respect, the Act of 1937 (Code, Ann. Supp., § 87-803 (a)) gives municipalities the power to "extend any undertaking wholly within or wholly without the municipality", and, under subsection (d) "To pledge to the punctual payment of said certificates and interest thereon all or any part of the revenues of such undertaking (including the revenues of improvements, betterments, or extensions thereto thereafter constructed or acquired as well as the revenues of existing systems, plants, works, instrumentalities and properties of the undertaking so improved, bettered or extended), or of any part of such undertaking."

Subsection (d1), added by the amendment of 1939, provides as follows: "To fix the value of existing undertakings at the time the school district, county, city or town desires to reconstruct,

improve, better or extend such undertaking, and to pledge to the payment of the revenue-anticipation certificates and the interest thereon, issued for said undertaking under this Chapter such part of the revenues of such undertaking as the cost of the reconstruction, improvement, betterment, or extension of the undertaking bears to the said cost plus the value of the existing undertaking before reconstruction, improvement, betterment or extension. The provisions of this subsection shall not be construed to restrict or limit the powers granted in subsection (d) of this section." The question of the necessity of valuation where existing facilities are being extended was raised in *Dade County* v. *State*, 77 *Ga. App.* 139 (48 S. E. 2d 144) and this court held: "It is clear from this that if a municipality desires, it may still pledge the entire revenue of existing facilities, along with the revenues from improvements made thereon with funds secured by the issuance of revenue-anticipation certificates, to the payment of these certificates and the interest thereon, or it may value the existing facilities, and by following the formula provided in the act of 1939 eliminate from the revenue pledged for payment of the certificates that revenue derived from existing facilities on which improvements, etc., were made, and by the express terms of the Constitution of Georgia, article 7, section 7, paragraph 5 (Code, Ann., § 2-6005), the acts of a municipality under the above provisions of law are authorized by and contravene no provisions of the Constitution." Request is made to overrule this case and any others holding to the same effect on the ground that this holding is in conflict with the decision of the Supreme Court in *Lawson* v. *City of Moultrie*, 194 *Ga.* 699, 700 (22 S. E. 2d 592) as follows: "Before the act of 1939 (Ga. L. 1939, pp. 362 et seq.) there was no law making applicable the provisions of the act of 1937 to improvements, betterments, and extensions of existing plants. This was provided for in an amendment to subsection (d) of section 3 of the act of 1937, by adding a new section to be numbered d-1." Immediately thereafter the decision refers to *Miller* v. *Head*, 186 *Ga.* 694 (198 S. E. 680) and states, "The ground was thoroughly plowed in that case, and it would serve no useful purpose to go over it again." *Miller* v. *Head* was decided in 1938 and held that the act of 1937 was constitutional as applied to new facilities, but that "if these provisions should be

understood as purporting to authorize the use of *existing* funds or property of the county . . . they would seem to be contrary to the stated constitutional limitations." In the *Lawson* case, which came after the amendment of 1939 but before the new Constitution of 1945, the city was proceeding under the 1939 act to extend existing facilities and issue certificates on the prorata valuation basis stated in subsection d 1 of the act. Accordingly, both the *Lawson* and *Miller* cases are to the effect that, as of the time they were handed down, a proceeding as authorized by the act of 1937 and codified in subsection (d) of Code (Ann. Supp.) § 87-803 to extend existing facilities and pledge the entire revenue of both new and existing facilities without regard to valuation would be unconstitutional as violating the debt-limitation provisions of the Constitution. Regardless of whether or not these statements are obiter in the cases in which they appear, the Constitution of 1945 (Code, Ann., § 2-6005, supra) specifically provides for the procedures set out in the acts of both 1937 and 1939 and in effect incorporates such acts into the Constitution itself. Subsection (d 1) supra by its terms in no way restricts or limits the powers granted by subsection (d). The attack of unconstitutionality on the ground of failure to evaluate the properties can no longer be made against subsection (d), from which it follows that the decision in *Dade County* v. *State*, supra, issued after the adoption of the Constitution of 1945 is a correct statement of the law, and the request to overrule this and similar cases is denied. The trial court properly held that this proceeding might be maintained under the terms of subsection (d) without regard to the alternate method outlined in subsection (d 1).

■ It is further contended that the motion to dismiss was erroneously overruled because the resolution of the city authorities to validate these bonds, on which the application is predicated, is insufficient in that it fails to set out as required by law the facts as to the alleged project and improvements, the plans, data, specifications and methods by which the monies are to be used, or to set out with definiteness or certainty the project or improvement to be built, its nature, kind or location, and that the petition and answer are insufficient for the same reasons. The resolution provides that the extension of improvements is to be made "all substantially in accordance with the engineering rec-

ommendations and plans which are on file in the office of the Clerk of Council of the City of Savannah." In his order overruling the motion, the court pointed out that the motion came after the pre-trial conference had settled the law of the case, and after a hearing had been had on the merits and the case submitted to the court for final judgment, and at a time when the intervenors had in their possession all the information regarding plans and specifications called for by the motion. The court further quoted from *Miller* v. *State*, 83 *Ga. App.* 135, 141 (62 S. E. 2d 921) as follows: "It is not absolutely necessary that an intricate and detailed set of plans be incorporated in the resolution but enough facts concerning the proposed project or improvement must appear to afford a key from which the full picture of the project or improvement may be ascertained, such as, for example, a reference to reasonably specific plans, maps, specifications or their equivalent." Under the authority of this case the resolution, which made reference to such plans and specifications in the office of the clerk of council (where they were available to the public) was sufficient. It would have been better, however, to have attached a copy thereof to the petition, and it is unnecessary to decide whether or not, as to the *petition*, a motion to dismiss in the nature of a general demurrer would lie where the pleadings do not show with any certainty upon what plans the resolution is based. Error, to be reversible, must be harmful, and it clearly appears from the evidence in this case that this omission in no way harmed the plaintiffs in error since the material to which reference is made in the resolution was at all times both available to them and in their possession. Accordingly, no reversal of the judgment of the court is required on this ground. It might be added here that the information contained in this engineering report, which was introduced in evidence, sets out by subdivisions the localities to which the proposed facilities are to be extended, the number of immediately available and estimated future residences to be supplied in each, estimates of growth, regulations governing the operation of the facilities, rates and estimated amounts, expenses, estimated revenues, methods of financing, a map of the areas affected, and sufficient other pertinent information to form the basis of a contract between the municipality and purchasers of the bonds. It accordingly meets the statutory re-

quirements as to certainty and definiteness, in that it shows with reasonable certainty the nature, kind and location of the improvements and describes and defines with reasonable fullness and definiteness the undertaking including the estimated costs thereof. *Miller* v. *State*, supra.

■ Objection is made to certain correspondence and a preliminary engineering report offered for the stated purpose that it provided background information relative to the initial investigation of the project, on the stated grounds that it was irrelevant and immaterial and encumbered the record, and, as to one letter, that it had not been properly identified. The contents of these documents are not set out, there is no contention that the rulings were prejudicial to the rights of the plaintiffs in error, and there seems to have been no likelihood of a prejudicial effect from their admission. Accordingly, the assignments of error on the admission of this evidence are without merit. *Stewart Bros.* v. *Randall Bros.*, 138 *Ga.* 796 (5) (76 S. E. 352); *Continental Trust Co.* v. *Bank of Harrison*, 36 *Ga. App.* 149 (5) (136 S. E. 319); *Chandler* v. *Mutual Life &c. Assn. of Georgia*, 131 *Ga.* 82 (2) (61 S. E. 1036).

■ Under the provisions of Code (Ann. Supp.) § 87-818 "the judge of the said superior court shall proceed to hear and determine all the questions of law and of fact in said cause and shall render judgment thereon." Upon the pre-trial conference the question was propounded, "Is the venture which the city is undertaking sound, feasible, and reasonable?", to which the trial court properly responded: "That is a question of fact upon which evidence will have to be submitted." As was stated in *Dade County* v. *State of Georgia*, 75 *Ga. App.* 330 (43 S. E. 2d 434): "Therefore, when a proper issue of fact is raised, as in the instant case, as to the feasibility of the plan to validate refunding certificates, it is for the trial court to determine, under the evidence, such issue. And it can not be left to the discretion of the governing authorities of a municipality to exercise a discretion as expressed in the resolution in such a situation as here presented. See Code, § 87-8118." This brings us to a consideration of whether or not the superior court properly and in accordance with the terms of law passed upon this issue. The ruling at the pre-trial conference indicates that the trial court understood this to

be his duty, and the presumption that he had done so would ordinarily control in case of doubt. However, in entering final judgment in the case in favor of the validation of the bonds, the court on the same day, but prior to the signing of the formal order, gave the following written opinion: "As to whether or not the city authorities exercised proper discretion in adopting the ordinances authorizing the issuance of revenue certificates, the Court will quote from the case of *Lewis* v. *Savannah*, 210 *Ga*. 591 [a proceeding for injunction] which was decided by the Supreme Court in May, 1954, and sets out the *rules to be followed in deciding these issues:*

" '2. . . courts "should never undertake to substitute their judgment, in matters of judgment, for that of the city's governing authorities." 3. "When a municipal corporation is, by its proper officers acting within the scope of its powers, a court of equity will not, at the instance of the taxpayers of the corporation, interfere to restrain or control its action, on the ground that the same is unwise or extravagant. To sustain such interference, it must appear, either that the act is ultra vires, or fraudulent and corrupt." 4. "The business affairs of the municipality are committed to the corporate authorities, and the courts will not interfere except in a clear case of mismanagement or fraud." ' *Applying these principles of law* to the admitted pleadings and *to the evidence itself,* the court must reach the conclusion that the city did not abuse its discretion in any of its acts, and the Court does not feel authorized to interfere with the operation of the city government for any reason set out and presented in this case. [Emphasis added.]" This opinion clearly indicates that the trial judge was undertaking to review the discretion of the municipal authorities in launching the undertaking rather than to use his own discretion as the trior of facts in determining the issues presented to him under the evidence in the case. The evidence is voluminous and will not be set forth here. It is sufficient to say that while it does not demand a finding that the project is reasonable, sound and feasible, yet it is sufficient to authorize such finding, but it affirmatively appears from the trial court's written opinion in connection with his written order that he failed to make any finding whatever, except that the discretion of the municipal authorities had not been abused, it not appearing from

the record that the act "is ultra vires or fraudulent or corrupt." Where the court, upon hearing the trial of an issue, acting upon an erroneous concept of the law, binding him, as he thinks, upon a single point, and so acting fails to determine the questions of fact involved in the controversy, the case will be reversed by this court and remanded with direction that the trial court again review the evidence in the record and from it determine the issue of fact. *Stribling* v. *Georgia Ry. & Power Co.*, 139 *Ga.* 676 (78 S. E. 42). Accordingly, this case is reversed on this assignment of error and remanded to the trial court with the direction that only the evidence already embraced in this record be reviewed by the trial court; that he from this evidence determine the issue of whether or not this project is sound, reasonable and feasible, and that thereupon final judgment in accordance with such finding be entered.

*Reversed and remanded with direction. Gardner, P. J., and Carlisle, J., concur.*

### On Motion to Amend the Judgment.

The defendant in error has filed a motion in this court in which it is contended that it is the duty and obligation, and within the power of this court, under authority of Code § 6-1610, to give such order and direction to the trial court in this case as is consistent with the law and the facts therein and which will prevent the protraction of this litigation (*United States Fidelity &c. Co.* v. *Clarke*, 187 *Ga.* 774, 793, 2 S. E. 2d 608, and citations; *Mell* v. *Mell*, 190 *Ga.* 508, 513, 9 S. E. 2d 756; *Deck* v. *Deck*, 195 *Ga.* 404, 407, 24 S. E. 2d 303), and make a final disposition thereof, in view of the fact that this court has found that the evidence would authorize, although not demand, a judgment validating the bonds as rendered, and in view of the further fact that the court showed, by his ruling on a pre-trial conference, that he understood his duty to be to pass on the soundness, reasonableness and feasibility of the project, which this court in the foregoing opinion held the trial court had failed to do, drawing such conclusion from the language of the court's opinion published simultaneously with his judgment. Our difficulty in this case has been that it is impossible from the record to determine whether the trial court in fact made a finding determining this issue, and the language of the opinion strongly suggests that he did not. If the

court did in fact arrive at his judgment from a determination of this issue and not, as presumed by this court, confine it to the issue of whether or not the municipal authorities had committed an abuse of discretion, this case should be affirmed. Whether he did so or not is a matter known only to himself. This court is not disposed to unnecessarily protract this litigation; it is rather our purpose to bring it to a speedy and proper conclusion. Also, it has been made to appear that a final adjudication of the question is of utmost public importance and concern to a large population group in the area affected and that any undue delay in its determination one way or the other will result in substantial loss to the community. The amendment to this judgment is requested because, should the trial court enter his order upon the return of the remittitur disclosing the fact that he had already determined that the project is sound, reasonable and feasible, the case will be finally determined on this appeal and no other will lie, as might be the case should the judgment remain as it existed prior to amendment. Such amendment can in no way affect any rights of appellants. All questions that could be raised on a new appeal will have been settled by this one. Should the case be reversed for an independent finding of fact on the part of the trial court, and such finding be made adversely to the contentions of appellants, this decision as it now stands holds that such a finding is authorized. This holding is a necessary part of the decision of this court, since whether or not a judgment was authorized or demanded either way must be determined as a prerequisite to the direction given by this court to the trial court in this case. On the other hand, if the basic issue was in fact determined by the trial court, it is only necessary that this, rather than the contrary, appear from the judgment of the court. Accordingly, the motion to modify the judgment is granted in that, instead of the case being reversed outright, the judgment of the trial judge is affirmed on condition that if in fact the judgment entered by him in this case was predicated by him upon a decision that the project is sound, reasonable and feasible, he so amend his judgment nunc pro tunc as to cause this to appear therein, such amendment, if made, to be made within ten days from the time the remittitur from this court reaches the trial court. If this issue was not in fact determined by the trial court, and no amendment of the

judgment to this effect made within the time allowed, the judgment stands reversed in accordance with the original opinion herein.