A06A0253, A06A0254. BERRY et al. v. CITY OF EAST POINT et al. (two cases).

(627 SE2d 391)

BLACKBURN, Presiding Judge.

In these related cases, Bobby L. Berry and Melvin A. Pittman ("Intervenors"), pro se, intervened in a proceeding brought by the State of Georgia against the City of East Point ("City") and the East Point Building Authority ("Building Authority") to validate bonds in the amount of $54,000,000. Intervenors were members of the board of the Building Authority and were the two dissenting members in the board's vote to issue the bonds. In Case No. A06A0253, Intervenors appeal an order by the Fulton County Superior Court validating the bonds. In Case No. A06A0254, Intervenors appeal an order by the Fulton County Superior Court requiring them to post a $625,000 surety bond, pursuant to OCGA § 50-15-2, to cover the costs incurred by the Building Authority due to added delay, in the event the Authority prevailed in Intervenors' appeal of the bond validation order. Because the trial court properly required Intervenors to post a bond pursuant to the Public Lawsuits Act, and the Intervenors did not post such a bond, we affirm the order in Case No. A06A0254, and dismiss Intervenors' appeal in Case No. A06A0253.

The undisputed record shows that the Building Authority sought to issue revenue bonds in the amount of $54,000,000 to finance certain improvements to its storm water and sanitary waste water facilities ("sewer project"). The purpose of the sewer project is, in part, to comply with a consent order between the City and the Georgia Environmental Protection Division which required the City to address historical sewer spills and prevent future ones. The consent order established a timetable for construction and created stipulated penalties for violations of the consent order.

The sewer project facilities would be owned by the Building Authority and leased to the City for an amount sufficient to pay the principal and interest on the bonds. The City would levy ad valorem taxes as necessary to make the payments required under the lease agreement.

After a bond validation hearing in which the Intervenors participated, the trial court entered an order validating the bond, which the Intervenors appealed in Case No. A06A0253. Following a subsequent hearing, the trial court issued an order pursuant to the Public Lawsuits Act,[1] requiring the Intervenors to post a $625,000 surety bond if they decided to pursue an appeal of the validation order.

---

[1] OCGA § 50-15-1 et seq.

Intervenors did not post the bond, and Intervenors appealed the order requiring a surety bond in Case No. A06A0253.

*Case No. A06A0254*

1. Intervenors contend that the trial court erred in requiring them to post a surety bond pursuant to the Public Lawsuits Act.[2] We disagree.

> The Public Lawsuits Act gives courts the authority to require a bond of any party who opposes a public improvement project in a public lawsuit. The purpose of the act is to protect the public from increased financial costs caused by the filing of non-meritorious or frivolous litigation against the project. . . . As codified, the act permits any political subdivision in a public lawsuit to petition for a court order that the opposing party or intervenors be dismissed unless they post a bond. . . . The bond requirement is not limited to appeals, but may be imposed by the trial court whenever it determines that a bond would be in the public's interest. . . . If no bond is filed within ten days of an order, the opposing party or intervenor shall be dismissed by operation of law, but may appeal the order. . . . On appeal, we must determine whether the trial court abused its discretion in requiring the intervenors to post a [$625,000] surety bond. The issue is whether the trial court correctly concluded that it was in the "public interest" to require a surety bond in this validation proceeding.

(Footnotes omitted.) *Haney v. Dev. Auth. of Bremen.*[3]

"[I]n order to determine if the trial court abused its discretion in ordering the imposition of a surety or supersedeas bond, the appellate court must first determine whether the claims raised by the intervenors are meritorious." *Hay v. Newton County.*[4] In a bond validation hearing, the role of the trial court is to determine whether the bond proposal is " 'sound, feasible, and reasonable.' " *Carter v. State of Ga.*[5] Such determinations are questions of fact and "will not be set aside if there is any evidence to support" them. (Punctuation omitted.) *Hay v. Newton County.*[6]

---

[2] OCGA § 50-15-2.

[3] *Haney v. Dev. Auth. of Bremen*, 271 Ga. 403, 404-406 (1)-(2) (519 SE2d 665) (1999).

[4] *Hay v. Newton County*, 246 Ga. App. 44, 46 (2) (538 SE2d 181) (2000).

[5] *Carter v. State of Ga.*, 93 Ga. App. 12, 19 (7) (90 SE2d 672) (1955).

[6] *Hay v. Newton County*, 273 Ga. App. 423 (615 SE2d 234) (2005).

2. Intervenors contend that the trial court erred in not deciding certain matters of law, in that the court's validation order failed to specifically rule on each of their arguments. We disagree. The court's order contains findings addressing each necessary element of the validation proceeding and explicitly stated that the court had considered and dismissed Intervenors' motion and petition for nonvalidation. Therefore, the trial court's order did not err by failing to rule on Intervenors' claims. See, e.g., *Portis v. State.*[7]

3. Intervenors contend that the Building Authority violated its internal competitive bidding procedures when it selected bond counsel and the underwriters for the bond proceeding. "In bond validation suits under our law any question that goes to the power to issue and validity or regularity of the issuance of such bonds may be properly raised." (Punctuation omitted.) *Dade County v. State of Ga.*[8] However, a dispute as to the process for selection of the outside counsel and underwriter is not material to the merits of the bond proposal. Therefore, this enumeration is without merit.

4. Intervenors also contend that the trial court erred in validating the bond, because they dispute representations and warranties made in the proposed lease agreement, which states that the City had no knowledge of pending or threatened legal actions that would affect the ability of the City to perform its obligations under the lease. Intervenors assert that this is a misrepresentation affecting the validity of the proposed lease agreement, in that Intervenors assert that a prior lawsuit (not involving the City of East Point) involving the City of Atlanta's ability to collect storm water fees could jeopardize the City of East Point's ability to pay the principal and interest on the bonds.

Intervenors do not cite specific pending or threatened litigation (other than the threat of a challenge to the bond validation itself) that would materially affect the ability of the City to perform its obligations under the lease. Furthermore, the alleged misrepresentations are contained in the representations and warranties in an unexecuted lease, which is subject to revision until the time the lease is executed. Therefore, an inaccuracy, if any, can be cured and does not in and of itself make the bond proposal invalid.

5. Intervenors next contend that the bond proposal was not valid because the Building Authority had not properly registered with the Georgia Department of Community Affairs, as required by OCGA § 36-80-16 (e) and (f), which provide:

---

[7] *Portis v. State*, 149 Ga. App. 50, 52 (253 SE2d 441) (1979).

[8] *Dade County v. State of Ga.*, 75 Ga. App. 330, 334 (2) (c) (43 SE2d 434) (1947).

(e) All local government authorities authorized to operate in the State of Georgia must register annually with the Department of Community Affairs.

(f) Any local government authority which fails to register with the Department of Community Affairs shall not incur any debt or credit obligations *until such time as it meets the registration requirement.* Failure to register shall not have any adverse affect on any outstanding debt or credit obligation.

(Emphasis supplied.)

Here, the Building Authority admits that it had not complied with the registration requirement at the time the Board voted to propose the bond. However, as found by the trial court, evidence showed no violation of OCGA § 36-80-16 (f), because the Authority demonstrated that it had properly registered before the bond proposal was validated by the trial court. Therefore, the procedural deficiency, if any, had been cured before the validation hearing.

6. Intervenors next challenge the City's authority to levy taxes to make the payments required under the lease with the Building Authority. The bond proposal would require the City to make lease payments to the Building Authority, which the Building Authority would then use to pay the principal and interest on the bond. Intervenors contest this arrangement for three reasons: (a) it would violate Article IX, Section V, Paragraph I (a) of the Georgia Constitution in that it creates "new debt" without a referendum, (b) it would constitute a pledge of the City's full faith and credit, in violation of OCGA § 36-82-66, which provides that bond holders shall not "have the right to compel any exercise of the taxing power" of the issuer, and (c) the arrangement would unlawfully allow the City to levy taxes above the purported limit of 15 mills. We disagree.

(a) *Creation of New Debt.* The Georgia Constitution prohibits municipalities from creating "new debt without the assent of a majority of the qualified voters" of the municipality. Ga. Const. 1983, Art. IX, Sec. V, Par. I (a). However, here, the bond proposal creates a contractual obligation on the part of the City to make lease payments to the Building Authority. As this is a valid contract between the two entities which are authorized to undertake the contemplated sewer project arrangement, it falls into the "intergovernmental contract" exception to the above rule. See Ga. Const. 1983, Art. IX, Sec. III, Par. I (a). Therefore, the City's payment "for the use of the [sewer project]

is a debt, but it is a debt authorized under the constitution." (Punctuation omitted.) *Clayton County Airport Auth. v. State of Ga.*[9]

(b) *Pledge of Taxing Power.* Intervenors also contend that the bond proposal would compel the City to raise taxes in contravention of OCGA § 36-82-66, which provides, in relevant part: "No holder or holders of any such bonds shall ever have the right to compel any exercise of the taxing power of the governmental body to pay any such bonds or the interest thereon." Here, the City would pledge its full faith and credit to make payments required under the lease with the Building Authority.

> Although the bonds are obligations of the [Building] Authority and the [City] cannot pledge its full faith and credit to pay them, the [City] does have the authority under the intergovernmental clause of the Constitution, to enter into contracts with the Authority and to pledge its full faith and credit and levy taxes to meet its contractual obligations pursuant to the law of contracts.

(Citation and punctuation omitted.) *Clayton County Airport Auth.,* supra, 265 Ga. at 26 (2). Therefore, the pledge of the taxing power is permissible, and the trial court did not err in so ruling. See *Reed v. State of Ga.*[10]

(c) *Limit on Taxation.* Intervenors contend that the trial court erred when it ruled that the City's authority to levy taxes to make payments under the lease is not limited by a provision of the City charter that limits the City's authority to levy ad valorem taxes to 15 mills on each dollar of taxable property. We disagree.

The relevant provision of the City's charter, adopted in 1972, limits the City's authority to levy ad valorem taxes on property to 15 mills per dollar of taxable value.[11] However, the act creating the Building Authority, adopted in 1983, explicitly authorizes the City to

> obligate itself to pay the amounts required under *any contract* entered into with the Authority from funds received from taxes to be levied and collected for that purpose *to the extent necessary to pay the obligations contractually incurred* . . . and, when such obligation is made to make such payments from taxes to be levied for that purpose, then the obligation shall be mandatory to levy and collect such taxes

[9] *Clayton County Airport Auth. v. State of Ga.*, 265 Ga. 24, 25 (1) (453 SE2d 8) (1995).
[10] *Reed v. State of Ga.*, 265 Ga. 458, 459 (1) (458 SE2d 113) (1995).
[11] Ga. L. 1972, p. 2201, § 111.

from year to year *in an amount sufficient to fulfill and fully comply with the terms of such obligation.*[12]

(Emphasis supplied.) This language "shall be liberally construed for the accomplishment of its purposes."[13] To the extent that the emphasized language conflicts with the earlier enacted 15-mill limitation on the City's taxing authority, the later-enacted provision must govern. *Pawnmart, Inc. v. Gwinnett County*[14] ("[i]t is well-settled in Georgia that the rule for construing statutes which may be in conflict is that the most recent legislative expression prevails") (punctuation omitted). Indeed, the Act by its own terms repeals "[a]ll laws and parts of laws in conflict."[15] "Furthermore, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any inconsistency between them." (Punctuation omitted.) *Metzger v. Americredit Financial Svcs.*[16] Accordingly, we hold that the trial court did not err in validating this arrangement in the bond proposal.

7. Intervenors contend that the process by which the Building Authority approved the bond proposal was improper. First, Intervenors allege that a dispute between the Building Authority and the City over the payment of prior invoices for attorney fees was used by the City to coerce the Building Authority to vote in favor of issuing the bond. Intervenors cite to a letter from the City requesting the Building Authority to issue the bonds and stating that the proceeds from the bonds would cover a one-time payment of $1,212 for certain prior legal expenses of the Building Authority. The letter is worded in the form of a "request" from one governmental body to another, and the court was authorized to find no evidence of "coercion or intimidation," as alleged by the Intervenors.

Intervenors also allege that procedural irregularities occurred in the Building Authority's meeting and vote on the bond proposal, including violations of the Open Meetings Act and the Building Authority's bylaws. There was, however, evidence from the Secretary of the Building Authority which showed that the Authority's meeting and vote on the bond proposal were properly conducted and that the public participation requirements were met. "[O]n appeal [an appellate] court will not set aside a trial court's decision as to an issue of fact in a bond validation hearing if there is any evidence to support it."

---

[12] Ga. L. 1983, p. 4309, § 5.

[13] Ga. L. 1983, p. 4314, § 17.

[14] *Pawnmart, Inc. v. Gwinnett County*, 279 Ga. 19, 20 (2) (608 SE2d 639) (2005).

[15] Ga. L. 1983, p. 4315, § 22.

[16] *Metzger v. Americredit Financial Svcs.*, 273 Ga. App. 453, 459 (615 SE2d 120) (2005).

*Alexander v. Macon-Bibb County Urban Dev. &c.*[17] Therefore, in light of evidence that the Building Authority properly considered and approved the bond proposal, we discern no error.

8. Intervenors allege that the trial court erred in not timely submitting their appeal to the Court of Appeals, despite the fact that, by their own admission, they did not file the transcript within 30 days of their notice of appeal as required by OCGA § 5-6-42.[18] Intervenors correctly point out that OCGA § 5-6-43 (a) requires the clerk of the trial court to transmit the record and transcript to the appellate court within five days of the date the transcript was filed. The clerk of the trial court apparently did not do so in this case. However, as Intervenors seek to prevent the validation of the bond proposal, and the trial court's order was stayed on appeal, we discern no harm caused to Intervenors by the delay of the clerk of the trial court to transmit the appeal to this Court. Further, as "[a]ppellants are not accountable for delays caused by clerks of court," we see no reason to hold appellees accountable for such delays. *Crown Diamond Co. v. N. Y. Diamond Corp.*[19] We note that, in accordance with OCGA § 50-15-3, we have expedited this appeal.

9. Intervenors next cite testimony by appellees' expert, the City's Public Works Director, that he could not recall whether a study was done of the City's sewer system, and, without pointing to any specific requirement for a study, contend that the trial court erred in validating the bond proposal despite this fact. First, we note that the testimony complained of was elicited after the trial court validated the bond, so the trial court could not have erroneously ignored it to issue the validation order. Second, a trial court's determination as to the soundness, feasibility, and reasonableness of a bond proposal "will not be set aside if there is any evidence to support" it. (Punctuation omitted.) *Hay v. Newton County*, supra, 273 Ga. App. at 423. Here, there was evidence to support the trial court's conclusion that the bond proposal was passed by the proper legislative bodies and within their scope of authority. Accordingly, this enumeration fails.

10. Finally, the Intervenors challenge the trial court's refusal to grant their motion for joinder. Intervenors moved for joinder despite the fact that they were already properly participating in the bond validation action under OCGA § 36-82-77 (a). They were heard by the trial court at two separate hearings, one on the merits of the bond

---

[17] *Alexander v. Macon-Bibb County Urban Dev. &c.*, 257 Ga. 181, 183 (2) (357 SE2d 62) (1987).

[18] As the Intervenors' failure to timely file a transcript was not addressed by the trial court or raised on appeal, we do not address that issue here.

[19] *Crown Diamond Co. v. N. Y. Diamond Corp.*, 242 Ga. App. 674, 676 (2) (530 SE2d 800) (2000).

validation and one on the appellees' motion to require a surety bond pursuant to the Public Lawsuits Act. Each time, the Intervenors fully availed themselves of the opportunity to participate offered to them by the trial court. Also, in each case, Intervenors availed themselves of the appellate process and filed briefs with this court. Accordingly, Intervenors have fully participated in the bond validation process, and this enumeration is without merit.

Intervenors' remaining enumerations are duplicative of the issues addressed above and are therefore moot. Because we determined Intervenors' claims lacked merit, we affirm the judgment requiring them to post a surety bond.

### Case No. A06A0253

Because the trial court properly required Intervenors to post a surety bond, and they did not, we dismiss the appeal in Case No. A06A0253. See *Hay v. Newton County*, supra, 246 Ga. App. at 48 (3).

*Judgment affirmed in Case No. A06A0254. Appeal dismissed in Case No. A06A0253. Mikell and Adams, JJ., concur.*

DECIDED FEBRUARY 17, 2006.

Bobby L. Berry, *pro se.*
Melvin A. Pittman, *pro se.*
*Fincher & Hecht, Gregory K. Hecht, Hunton & Williams, Benjamin F. Johnson IV, S. Ralph Martin, Jr.,* for appellees.