**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 2, 2024**

# In the Court of Appeals of Georgia

A23A1718. CLAY et al. v. STATE OF GEORGIA.

MARKLE, Judge.

This appeal arises from a lawsuit challenging the development and construction of the Rivian Horizon electric vehicle manufacturing facilities on state-owned property in Morgan and Walton Counties ("the Rivian Project"). Edward Clay, Candace Beam, Alan D. Jenkins, Felton Jenkins, III, Deborah Crowe, and James Gunn (collectively "the plaintiffs") filed suit against the State, seeking a declaratory judgment that the Rivian Project violated local and state law, and an injunction to halt the project. At the State's request, the trial court ordered the plaintiffs to post a surety bond in the amount of $364,619.55 under OCGA § 50-15-2. The plaintiffs now appeal from that order, arguing that the trial court improperly shifted the burden of proof to

them; failed to make the necessary findings that would authorize the bond order; and erred by including attorney fees in the amount of the bond. For the reasons that follow, we vacate the trial court's order and remand the case for further proceedings.

We review the trial court's decision to order the bond under OCGA § 50-15-2 for abuse of discretion. *Berry v. City of East Point*, 277 Ga. App. 649, 650 (1) (627 SE2d 391) (2006). So viewed, the record shows that the plaintiffs own, lease, and live on property zoned for agricultural and residential use in Morgan County. The State purchased a number of tracts of land in and around Morgan County, and, in September 2022, the Joint Development Authority of Jasper, Morgan, Newton, and Walton Counties ("the JDA") leased this property from the State and then rented the property to Rivian for economic development of the Rivian Project.[1] This project, which offered extensive tax breaks and incentives to Rivian, was expected to provide

---

[1] It appears that the JDA and Jasper, Walton, Newton, and Morgan Counties entered into an Intergovernmental Development Services contract in 2021 to develop the area as a research park. Per the terms of that contract, the JDA agreed that the development of the land would be subject to local ordinances. However, the JDA apparently transferred the property back to the State in early 2022, before entering into the new agreement for the Rivian Project. The current contract does not include that language, but the plaintiffs contend that the previous agreement applies to the Rivian Project because it was a "Future Project" as defined under the 2021 agreement.

7,500 new jobs, as well as other economic benefits to the State. Shortly thereafter, the JDA began developing the property.

The plaintiffs opposed the development, and several of them filed suit in Morgan County, asserting that the Rivian Project failed to comply with applicable zoning regulations. They requested a writ of mandamus, a declaratory judgment, and injunctive relief. After the State intervened, the trial court denied a preliminary injunction, and the lawsuit was voluntarily dismissed.

In January 2023, the plaintiffs filed the instant suit in Fulton County, seeking declaratory and injunctive relief. According to the complaint, the Rivian Project failed to comply with local zoning ordinances and had a negative impact on pollution and groundwater. Around the same time, they filed another, nearly identical, complaint in Morgan County.[2]

The State responded to the Fulton County complaint and filed a counterclaim seeking declaratory relief that the zoning ordinances did not apply because the property was state-owned. They also moved to dismiss or to transfer the case to

---

[2] The plaintiffs also intervened in the case involving validation of the bonds, and we recently held that the trial court erred by denying the bond validation. See *Joint Dev. Auth. of Jasper County v. McKenzie*, 367 Ga. App. 514, 519-525 (1)-(2) (887 SE2d 372) (2023).

Morgan County.  The State then moved for a bond under OCGA § 50-15-2 on the grounds that the complaint was a frivolous public lawsuit, and the State had already incurred expenses in connection with the previous suit filed in Morgan County that had been dismissed. Attached to the motion were affidavits from the attorney detailing the legal expenses incurred, as well as copies of bills and invoices.

Following a hearing, the trial court granted the motion for bond. The trial court found that the suit was a public lawsuit; a bond was in the public's interest; the State had made a strong showing that it would likely prevail on the merits, as another court had already ruled in the State's favor; and it was appropriate to include anticipated attorney fees in the bond amount. The trial court granted a certificate of immediate review, and we granted the interlocutory application.[3] This appeal followed.

1. Before we turn to the arguments raised on appeal, we must first consider our jurisdiction. See *Duffy v. Sanders*, 354 Ga. App. 684 (841 SE2d 415) (2020) ("It is well

---

[3] In the context of granting the certificate of immediate review, the trial court recited its understanding, or assumption, that its bond order was not directly appealable. Of course, it is the role of this Court, rather than the trial court, to determine whether an appeal may be brought directly or if it requires an application. See *Evans v. Jackson*, 368 Ga. App. 170, 172 (1) (a) (889 SE2d 343) (2023) ("[A]n appellate court is the sole authority in determining whether a filed notice of appeal or discretionary application is sufficient to invoke its jurisdiction.") (citation and punctuation omitted).

established that this Court has a solemn duty to inquire into our jurisdiction to review the errors enumerated on appeal, and it is a duty we do not take lightly.") (citation and punctuation omitted). The State has moved to dismiss this appeal, arguing that the proper procedural avenue was a timely direct appeal rather than seeking interlocutory review, and that having waited to file their notice of appeal until after the grant of interlocutory review, the notice of appeal was untimely.

> Georgia law is well settled that the right to appeal is not constitutional, but instead depends on statutory authority. The provisions of the law respecting the procedure to be followed in perfecting appeals to this Court are jurisdictional, and unless this Court has jurisdiction of a case, it is without power or authority to render a judgment upon review. The jurisdiction of an appellate court to consider an appeal depends upon whether the appeal is taken in substantial compliance with the rules of appellate procedure prescribing the conditions under which the judgment of the trial court may be considered appealable.

(Citations and punctuation omitted.) *Duke v. State*, 306 Ga. 171, 172 (1) (829 SE2d 348) (2019). Pursuant to OCGA § 50-15-2, in a public lawsuit in which the trial court has ordered the parties to post a surety bond, either party "may appeal the order under the procedure provided by law in cases of injunction." A trial court's order granting or denying injunctive relief is subject to direct appeal, and a party seeking a

direct appeal must file the notice of appeal within 30 days of the judgment or order to be appealed. OCGA §§ 5-6-34 (a) (4), 5-6-38 (a).

It has long been the practice to "grant a timely application for interlocutory review if the order complained of is subject to direct appeal and the applicants have not otherwise filed a notice of appeal." (Citation and punctuation omitted.) *Born v. Born*, 364 Ga. App. 511, 514 (874 SE2d 846) (2022); see also *In the Interest of C. C.*, 314 Ga. 446, 449, n. 6 (877 SE2d 555) (2022) (granting review in appeal from an order denying injunctive relief in dependency proceeding); *Barfield v. Butterworth*, 323 Ga. App. 156, 157 (1) (746 SE2d 819) (2013) (reviewing a an order in child custody case); *Aiken Dermatology & Skin Cancer Clinic v. DavLong Systems*, 314 Ga. App. 699, 704 (3), n. 3 (725 SE2d 835) (2012) (applying rule to summary judgment).[4]

Accordingly, although the best practice is to file a direct appeal, we have jurisdiction over this appeal.[5] We therefore deny the State's motion to dismiss.

---

[4] Although the State urges us to distinguish cases arising from partial grants or denials of summary judgment, neither the Supreme Court of Georgia nor this Court have limited the rule to only those types of cases.

[5] Notably, if the plaintiffs failed to post the bond, and the trial court dismissed their complaint, they would have the right to a direct appeal at that point. See *Hay v. Newton County*, 246 Ga. App. 44, 46 (2) (538 SE2d 181) (2000).

2. Turning to the arguments on appeal, the plaintiffs contend that the trial court erred by shifting the burden of proof to them; finding that the bond was in the public interest without making a determination that their claims were frivolous; and including attorney fees in the amount of the bond. We consider each in turn.

As is relevant here, OCGA § 50-15-2 provides:

At any time prior to the final determination of a public lawsuit in the trial court or on appeal, any political subdivision which is a party to the action may petition for an order of the court that the opposing party . . . be dismissed unless such opposing party . . . post a bond with surety to be approved by the court payable to the moving party for the payment of all damages and costs which may accrue by reason of such opposition or intervention in the event the moving party prevails. The moving party shall obtain from a judge of the court an order requiring the opposing party. . . to appear . . . and to show cause, if any exists, why the prayers of the petition should not be granted. . . . If, at the hearing of the petition on the order to show cause, the court determines that it is in the public interest to do so, the court shall set the amount of bond to be filed by the opposing party . . . in an amount found by the court to cover all damage and costs which may accrue to the political subdivision by reason of the opposition or intervention in the event the political subdivision prevails. In the event the bond is not filed . . . within ten days after the order is entered, the opposing party . . . shall be dismissed by operation of law.

Thus, before imposing a bond, the trial court must determine whether the State met its burden to show that (1) the action involves a political subdivision, (2) the action is a public lawsuit, (3) the claims raised lack merit, and (4) it is in the public

interest to impose a bond.[6] *Haney v. Dev. Auth. of Bremen*, 271 Ga. 403, 404-405 (1) (519 SE2d 665) (1999).

a. *Burden of proof.*

---

[6] At the bond hearing, the plaintiffs challenged the State's contention that the Rivian Project involved political subdivisions and that this action was a public lawsuit. But, they do not contest the trial court's findings on appeal and have abandoned any argument on those issues. Court of Appeals Rule 25 (d) (1). Regardless, it is clear that the plaintiffs' suit is a public lawsuit. See *Haney v. Dev. Auth. of Bremen*, 271 Ga. 403, 405 (1) (519 SE2d 665) (1999) ("'A public lawsuit' is defined as any action that questions or opposes the construction, improvement, financing, or leasing of any public improvement, project, or facility by any political subdivision . . . including, but not limited to, actions for declaratory judgments or injunctions or interventions.") (citation and punctuation omitted); see also OCGA § 50-15-1 (2). And, although the plaintiffs contend that the State merely owns the land but is not using it for any "governmental purpose," we are not persuaded. The parties have not cited any case law defining "governmental purpose," and we have found none. But, as we explained in *McKenzie*, the Rivian Project will provide extensive economic benefits to the State through employment opportunities and additional tax revenue, as well as increased construction jobs, housing, and retail development. See *Joint Dev. Auth. of Jasper County v. McKenzie*, 367 Ga. App. 514, 522 (1) (887 SE2d 372) (2023). We therefore conclude that the use of the State-owned land for the Rivian Project qualifies as a "government purpose." See OCGA § 50-7-16 (b) ("The Department of Economic Development is authorized to acquire real property and to construct, operate, and maintain such projects as are beneficial to the development of industry, trade, and tourism and to create economic and employment opportunities in the state."); see also *Haney*, 271 Ga. at 406 (3) ("The development of trade, commerce, industry, and employment opportunities [are] a public purpose vital to the welfare of the people of this state[.]") (citations and punctuation omitted); *Bd. of Commrs. of Chatham County v. Chatham Advertisers*, 258 Ga. 498, 499 (371 SE2d 850) (1988).

The plaintiffs first argue that the trial court erred by placing the burden of proof on them to show why the bond should not be granted. We disagree.

In its order, the trial court wrote, "Plaintiffs bear the burden [of] proof on this issue." Although this wording is misleading, a thorough review of the order shows that the trial court did not actually shift the burden. When we consider the order in its entirety, it is clear that the trial court first determined whether the State had met its burden to show it was a political subdivision and the lawsuit qualified as a public lawsuit under OCGA § 50-15-2 to justify the imposition of the bond, and that the claims lacked merit and the bond was in the public interest. Only then did it place the burden on the plaintiffs to show why the bond should not be granted. This framework is consistent with the plain language of the statute. OCGA § 50-15-2 (in a public lawsuit, when the State seeks a bond, the State "shall obtain from a judge of the court an order requiring the opposing party. . . to appear at such time and place . . . as the judge may direct and to show cause, if any exists, why the prayers of the petition should not be granted."); cf. *Bene v. State of Ga.*, 362 Ga. App. 73, 79 (3) (865 SE2d 249) (2021) (addressing affirmative defense in bond validation case, noting that although movant must establish facts for validation, the opposing party still has "the

burden . . . to show cause as to why the bonds should *not* be validated.") (emphasis in original); see also *Chamlee v. Dept. of Transp.*, 189 Ga. App. 334, 336 (5) (375 SE2d 626) (1988) (construing similar language in OCGA § 32-3-11 (c) and finding "although a rule nisi orders the respondent to show cause why certain action should not be taken, the burden of showing the necessity for taking such action is on the movant.") (citation and punctuation omitted). Accordingly, we conclude that, despite its inartful language, the trial court did not impermissibly shift the burden of proof.

b. *Public interest.*

The plaintiffs next argue that the trial court erred by finding the bond was in the public interest because the trial court never made a finding that their lawsuit was frivolous, finding instead that the State had shown the likelihood that it would prevail. They then explain that their claims have merit because the Rivian Project was required to comply with zoning and building ordinances, land disturbance protections, and erosion control requirements, and because the State conceded their claims were meritorious when it filed a counterclaim.[7] After a thorough review of the record, we

---

[7] They further argue that the proceedings in the prior Morgan County case cannot serve as a basis to find the current suit frivolous, as the Morgan County court merely denied a temporary restraining order and did not reach the merits. The earlier Morgan County case has no bearing on the merit of the instant case, as it was

conclude that the trial court failed to consider all of the plaintiffs' claims before ordering them to post bond.

> The Public Lawsuits Act gives courts the authority to require a bond of any party who opposes a public improvement project in a public lawsuit. . . . In order to determine if the trial court abused its discretion in ordering the imposition of a surety or supersedeas bond, the appellate court must first determine whether the claims raised by the [opposing party] are meritorious.

(Citations and punctuation omitted.) *Berry v. City of East Point*, 277 Ga. App. 649, 650 (1) (627 SE2d 391) (2006); see also *Haney*, 271 Ga. at 404 (1). "Meritorious" means "having enough legal value to prevail in a dispute." Black's Law Dictionary (11th ed. 2019).

Here, the trial court found that the State was likely to prevail, which is consistent with the statutory language and our case law. But the trial court focused only on the plaintiffs' claims regarding zoning issues and failed to consider the merits

---

voluntarily dismissed without prejudice and the trial court did not reach the merits. *Pollard v. Queensborough Natl. Bank & Trust Co.*, 356 Ga. App. 223, 230 (3) (844 SE2d 894) (2020) ("The factors in granting a TRO or interlocutory injunction do not require an adjudication of the underlying merits.").

of all of their arguments.[8] Specifically, the trial court did not address the plaintiffs'

claims that the Rivian Project failed to comply with building codes and environmental

controls, such as Georgia's Erosion and Sedimentation Act ("GESA"), OCGA § 12-

7-1, et seq. Nor did the court consider whether the terms of the 2021

Intergovernmental Development Services Contract applied to the Rivian Project.

Notably, the State concedes that it is subject to GESA, but asserts that it has

since complied with the statutory requirements. See OCGA § 12-7-7 (a) ("No land-

disturbing activities shall be conducted in this state . . . without the operator first

securing a permit from a local issuing authority [.]"). Nevertheless, the State has not

directed us to any part of the record demonstrating that it was in compliance at the

time the trial court issued the bond order. Instead, it cites to a Fulton County Superior

---

[8] We agree with the trial court's conclusion that the State was not subject to the zoning ordinances. As we noted in *McKenzie*, 367 Ga. App. at 532 (4) (c), the Economic Development Agreement specifically provides that the Rivian Project is exempt from zoning ordinances because of "ultimate ownership by the State and by virtue of its being an economic development project providing public benefits[.]" See also *Macon Assn. for Retarded Citizens v. Macon-Bibb County Planning and Zoning Comm.*, 252 Ga. 484, 489 (4) (314 SE2d 218) (1984) ("property owned by the state or county, and used for a governmental purpose, is exempt from municipal zoning regulation"); *Evans v. Just Open Govt.*, 242 Ga. 834, 837-838 (1) (251 SE2d 546) (1979) (same).

Court order in a different case, in which the State contends it obtained a variance. But we are limited to the evidence in the record at the time the court rendered its decision. *Leadership Prepatory Academy v. Butler*, 336 Ga. App. 275 (784 SE2d 109) (2016) ("[W]e cannot consider factual representations in [a] brief which do not appear on record.") (citation and punctuation omitted); see also *Brende v. Brende*, 330 Ga. App. 556, 557 (2) (768 SE2d 531) (2015) ("It is an ancient and honored tenet of law that we do not take evidence from the briefs of the parties, we do not get evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court.") (citation and punctuation omitted).

Accordingly, because the trial court's order failed to address whether any of the plaintiffs' other claims could have merit, and it appears from the record that at least one claim might, we must vacate the trial court's order imposing the bond. *Alpha Genomix Laboratories v. Crandall*, 368 Ga. App. 842, 858 (5) (891 SE2d 45) (2023) ("This Court is for the correction of errors of law, and where the trial court has not ruled on an issue, we will not address it.") (citation and punctuation omitted).

c. *Attorney fees included in bond amount.*

14

Finally, the plaintiffs argue that the trial court erred by including attorney fees in the amount of the bond because those fees do not constitute "damages and costs" under OCGA § 50-15-2. In light of our conclusion that the trial court must reconsider imposition of the bond, any opinion we would give on this issue would be advisory. *Huff v. Harpagon Co.*, 286 Ga. 809, 811 (2) (692 SE2d 336) (2010) ("Georgia appellate courts are not authorized to render advisory opinions as to potential error.") (citation and punctuation omitted); *In re Estate of Thompson*, 332 Ga. App. 774, 776 (2) (775 SE2d 158) (2015) ("[appellant's] argument depends on circumstances which may or may not recur at the next hearing, making an opinion on this enumeration advisory."). Accordingly, we do not reach it.

*Judgment vacated and case remanded. McFadden, P. J., and Brown, J., concur.*