S11A0354. CITY OF DECATUR et al. v. DeKALB COUNTY.

(713 SE2d 846)

HINES, Justice.

This is an appeal by plaintiffs City of Decatur, City of Chamblee, City of Doraville, and City of Stone Mountain ("Cities") from an order of the Superior Court of DeKalb County granting summary judgment to defendant DeKalb County ("County") in this litigation for alleged breach of an intergovernmental agreement ("IGA") entered into by the County and the Cities for the distribution of funds generated by a special sales tax instituted pursuant to the Homestead Option Sales and Use Tax Act ("HOST"), OCGA § 48-8-100 et seq. The superior court found that the IGA is unconstitutional as violative of the Intergovernmental Contracts Clause of the Georgia Constitution, 1983 Ga. Const., Art. IX, Sec. III, Par. I (a). For the reasons that follow, we affirm.

This litigation has been before the appellate courts of this State multiple times, and a summary of the salient facts and a procedural history are warranted. In January 1998, the County and the Cities, which are municipalities located within the county, entered into a 49-year agreement for the expenditure of tax revenue generated by a HOST, which had been approved by the County's electorate in 1997. The County and the Cities disagreed about the calculation of the funds to be distributed to the Cities, and in 2000, the Cities filed suit against the County initially seeking damages for breach of the IGA, conversion, and attorney fees. The superior court granted judgment in favor of the County after finding that the IGA violated the plain language of the HOST statute, OCGA § 48-8-100 et seq. The Cities appealed to the Court of Appeals, which held that the IGA violated the express provisions of the HOST statute and affirmed the judgment of the superior court. *City of Decatur v. DeKalb County*, 255 Ga. App. 868 (567 SE2d 332) (2002).[1] This Court granted certiorari to the Court of Appeals to determine whether it had properly interpreted OCGA § 48-8-100 et seq. to prohibit the IGA, and concluding that the Court of Appeals erred, this Court reversed. *City of Decatur v. DeKalb County*, 277 Ga. 292 (589 SE2d 561) (2003). We determined that the Court of Appeals had incorrectly found that the sole issue to be resolved was whether the IGA violated the plain

---

[1] The Court of Appeals stated that HOST, specifically OCGA §§ 48-8-102 (b); 48-8-104 (a), in effect at that time, expressly provided that the County bore responsibility for expending the tax proceeds for capital outlay projects, and that in the absence of legislative authority, the present IGA improperly sought to shift that responsibility to the Cities. It stated, "If the legislature had intended for counties to share HOST proceeds with cities in the manner described in the Intergovernmental Agreement, it could have so stated." *City of Decatur v. DeKalb County*, 255 Ga. App. at 870.

language of the HOST statute in that inasmuch as IGA's are provided for in the Georgia Constitution, that power could not be limited by HOST or any statutory pronouncement; however, at that time the trial court had not ruled as to whether the IGA at issue was authorized under the State Constitution but instead erroneously based its ruling on a statutory ground. Id. Following remand, the superior court denied the County's motion for summary judgment and granted the Cities' cross-motion for summary judgment, on the issue of how to calculate the proceeds under the IGA and on whether the agreement constituted an unlawful gratuity. See 1983 Ga. Const., Art. III, Sec. VI, Par. VI (a). On appeal to the Court of Appeals, the County contended that the IGA was invalid under the Intergovernmental Contracts Clause of the State Constitution, and the Court of Appeals agreed and reversed. *DeKalb County v. City of Decatur*, 287 Ga. App. 370 (651 SE2d 774) (2007). This Court granted certiorari and held that the Court of Appeals was without jurisdiction to decide the constitutional question. *City of Decatur v. DeKalb County*, 284 Ga. 434 (668 SE2d 247) (2008). The judgment of the Court of Appeals was vacated, and the case remanded to that Court with direction that it examine, after recognizing that the constitutional issue was not ripe for review, whether the superior court erred in denying summary judgment to the County; if the Court of Appeals determined that the superior court erred in its conclusion that genuine issues of material fact existed, then it was to vacate the superior court's judgment and remand the case to the superior court for it to address the constitutional issue. Id. at 438. After return to the Court of Appeals, that Court concluded that the superior court applied an erroneous legal analysis in denying summary judgment to the County; therefore, it vacated the superior court's judgment, and remanded the case with direction that the superior court address and resolve the constitutional issue of whether the IGA is a contract pertaining to the provision of services under the Intergovernmental Contracts Clause. *DeKalb County v. City of Decatur*, 297 Ga. App. 322 (677 SE2d 391) (2009). Following remand, the County renewed its motion for summary judgment and the superior court granted it and entered judgment in its favor after finding that the IGA is not a contract for the provision of services, and therefore, is outside the scope of the Intergovernmental Contracts Clause and unconstitutional. We agree.

The analysis begins and ends with our State Constitution.[2] It

---

[2] Since the execution of the present IGA in 1998, HOST, and specifically OCGA § 48-8-104, has been amended several times, including an amendment allowing distribution of HOST revenue to a "qualified municipality," i.e., "a municipality created on or after January 1, 2007, lying wholly within or partially within a county." OCGA § 48-8-101 (4). In *DeKalb*

sets debt limits for counties, municipalities, and other political subdivisions, and provides that new debt cannot be incurred without the assent of a majority of its qualified voters. 1983 Ga. Const., Art. IX, Sec. V, Par. I (a).[3] Furthermore, the general rule is that a local government "may not enter into a contract that lasts longer than that government's term of office." *Greene County School Dist. v. Greene County*, 278 Ga. 849, 850 (607 SE2d 881) (2005); OCGA § 36-30-3 (a).[4] However, the Intergovernmental Contracts Clause found in Art. IX, Sec. III, Par. I (a) of the 1983 Georgia Constitution "provides an exception to that rule, and allows political subdivisions of the State to contract with one another or with other public agencies, so long as the term of the contract does not exceed 50 years." *Greene County School Dist. v. Greene County*, supra at 850. This exception does not give the State and its institutions and subdivisions the authority " 'to enter into any and every contract which they might in their discretion deem advisable.' " Id. The agreement must satisfy certain requirements. It must involve "the provision of services, or . . . the joint or separate use of facilities or equipment" and "deal with activities, services, or facilities which the contracting parties are authorized by law to undertake or provide." (Punctuation omitted.) Id. at 851; *Nations v. Downtown Dev. Auth.*, 255 Ga. 324, 328 (338 SE2d 240) (1986).

Thus, the validity of the IGA at issue in this case hinges on whether, in substance, it is for the provision of "services" or "the joint or separate use of facilities or equipment" authorized by law. If the language of the contract is plain, unambiguous, and capable of only one reasonable interpretation, that interpretation must control, and no construction of the contract is required or even permissible. *Unified Govt. of Athens-Clarke County v. McCrary*, 280 Ga. 901, 903 (635 SE2d 150) (2006). The language of the present IGA is plain and unambiguous; it is an agreement about how to divide and distribute

---

*County v. Perdue*, 286 Ga. 793 (692 SE2d 331) (2010), this Court rejected certain constitutional challenges to pertinent provisions in the amended HOST; however, the decision did not address the constitutionality of any IGA in regard to the Intergovernmental Contracts Clause of the State Constitution, 1983 Ga. Const., Art. IX, Sec. III, Par. I (a).

[3] 1983 Ga. Const., Art. IX, Sec. III, Par. I (a) provides:

[t]he state, or any institution, department, or other agency thereof, and any county, municipality, school district, or other political subdivision of the state may contract for any period not exceeding 50 years with each other or with any other public agency, public corporation, or public authority for joint services, for the provision of services, or for the joint or separate use of facilities or equipment; but such contracts must deal with activities, services, or facilities which the contracting parties are authorized by law to undertake or provide. . . .

[4] OCGA § 36-30-3 (a) provides:

One council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government.

HOST revenues between DeKalb County and the Cities, with the Cities agreeing "to expend the monies disbursed . . . solely for capital outlay projects to be located within the geographical boundaries of DeKalb County and to be owned, operated or both either by the County, one of more Municipalities or any combination thereof." The focus and clear purpose of the agreement is to provide a formula for the distribution of the HOST revenues; simply, it is a revenue-sharing agreement. See *Greene County School Dist. v. Greene County*, supra at 851; *Nations v. Downtown Development Auth.*, supra at 326-328 (2) (a); *Mulkey v. Quillian*, 213 Ga. 507, 508-509 (1) (100 SE2d 268) (1957).

This IGA does not involve "the joint or separate use of facilities." Compare *Reed v. State of Ga.*, 265 Ga. 458 (1) (458 SE2d 113) (1995) (contruction and operation of water projects); *Clayton County Airport Auth. v. State of Ga.*, 265 Ga. 24, 24-25 (1) (453 SE2d 8) (1995) (expansion and use of airport); *Berry v. City of East Point*, 277 Ga. App. 649, 652-653 (6) (a) (627 SE2d 391) (2006) (sewer project arrangement); *Hay v. Newton County*, 246 Ga. App. 44, 47 (3) (538 SE2d 181) (2000) (acquisition and development of industrial park). Nor can it credibly be deemed an agreement for the provision of authorized "services." "Services" in the context of a "contract for services" has been defined as "[a]n intangible commodity in the form of human effort, such as labor, skill, or advice." Black's Law Dictionary, p. 1372 (7th ed. 1999). Such a definition comports with this Court's decisions addressing intergovernmental agreements that are agreements for authorized services. See and compare *Ambac Indem. Corp. v. Akridge*, 262 Ga. 773 (425 SE2d 637) (1993) (contract for garbage and solid waste disposal services); *Youngblood v. State of Ga.*, 259 Ga. 864, 866-867 (4) (388 SE2d 671) (1990) (contract for services involving construction of a recreational facility); *Frazer v. City of Albany*, 245 Ga. 399, 400 (2) (265 SE2d 581) (1980) (contract to finance construction of a civic center and for the services of the hiring of a manager to advise and consult regarding its construction). The fact that the present IGA requires the Cities to expend the tax proceeds in accordance with the mandates of the Homestead Option Sales and Use Tax Act, OCGA § 48-8-102,[5] does not transform it into

---

[5] Current OCGA § 48-8-102 states:

(a) Pursuant to the authority granted by Article IX, Section II, Paragraph VI of the Constitution of this state, there are created within this state 159 special districts. The geographical boundary of each county shall correspond with and shall be conterminous with the geographical boundary of one of the 159 special districts.

(b) When the imposition of a local sales and use tax is authorized according to the procedures provided in this article within a special district, the county whose geographical boundary is conterminous with that of the special district shall levy a local sales and use tax at the rate of 1 percent. Except as to rate, the local sales and

either a contract for services or one for the use of facilities. Indeed, the true nature of the IGA as a revenue-sharing contract is well-demonstrated by the very pleadings in this litigation filed by the Cities. The complaint unequivocally stated, inter alia, that the Cities objected to the lack of an equalization provision in the then proposed HOST legislation; that in order to secure the Cities' support for the legislation, the County promised the Cities that it would "enter into an intergovernmental agreement with them under which each municipality would receive an annual 'equalization payment'" from the capital improvement portion of the HOST proceeds; that such promise was memorialized by a "Tax Allocation Agreement," the express purpose and intent of which was to "equalize the HOST tax reduction benefits to all DeKalb County citizens"; and accordingly,

---

use tax shall correspond to the tax imposed and administered by Article 1 of this chapter. No item or transaction which is not subject to taxation by Article 1 of this chapter shall be subject to the sales and use tax levied pursuant to this article, except that the sales and use tax provided in this article shall be applicable to sales of motor fuels as prepaid local tax as that term is defined in Code Section 48-8-2 and shall be applicable to the sale of food and food ingredients and alcoholic beverages only to the extent provided for in paragraph (57) of Code Section 48-8-3.

(c) (1) Except as otherwise provided in paragraph (2) of this subsection, the proceeds of the sales and use tax levied and collected under this article shall be used only for the purposes of funding capital outlay projects and of funding services within a special district equal to the revenue lost to the homestead exemption as provided in Code Section 48-8-104 and, in the event excess funds remain following the expenditure for such purposes, such excess funds shall be expended as provided in subparagraph (c)(2)(C) of Code Section 48-8-104.

(2) Prior to January 1 of the year immediately following the first complete calendar year in which the sales and use tax under this article is imposed, such proceeds may be used for funding all or any portion of those services which are to be provided by the governing authority of the county whose geographic boundary is conterminous with that of the special district pursuant to and in accordance with Article IX, Section II, Paragraph III of the Constitution of this state.

(d) Such sales and use tax shall only be levied in a special district following the enactment of a local Act which provides for a homestead exemption of an amount to be determined from the amount of sales and use tax collected under this article. Such exemption shall commence with taxable years beginning on or after January 1 of the year immediately following the first complete calendar year in which the sales and use tax under this article is levied. Any such local Act shall incorporate by reference the terms and conditions specified under this article. Any such local Act shall not be subject to the provisions of Code Section 1-3-4.1. Any such homestead exemption under this article shall be in addition to and not in lieu of any other homestead exemption applicable to county taxes for county purposes within the special district. Notwithstanding any provision of such local Act to the contrary, the referendum which shall otherwise be required to be conducted under such local Act shall only be conducted if the resolution required under subsection (a) of Code Section 48-8-103 is adopted prior to the issuance of the call for the referendum under the local Act by the election superintendent. If such ordinance is not adopted by that date, the referendum otherwise required to be conducted under the local Act shall not be conducted.

(e) No sales and use tax shall be levied in a special district under this article in which a tax is levied and collected under Article 2 of this chapter.

the prepared IGA "followed the tax equalization intent and effect of the Tax Allocation Agreement."

Consequently, it must be concluded that the agreement between DeKalb County and the Cities is not a valid intergovernmental contract under the 1983 Georgia Constitution, Art. IX, Sec. III, Par. I (a), and therefore, that summary judgment was properly granted to DeKalb County.

*Judgment affirmed. Benham, Thompson and Melton, JJ., and Chief Judge Lawton E. Stephens, Judge John Simpson, and Judge Jason J. Deal concur. Hunstein, C. J., Carley, P. J., and Nahmias, J., disqualified.*

DECIDED JULY 5, 2011 —
RECONSIDERATION DENIED JULY 21, 2011.

*Wilson, Morton & Downs, Bryan A. Downs, Robert E. Wilson, Roslyn S. Mowatt, Keri P. Ware, Fowler, Hein, Cheatwood & Passino, Joe L. Fowler, Freeman, Mathis & Gary, Murray J. Weed,* for appellants.

*King & Spalding, Jason R. Edgecombe, L. Joseph Loveland, Jr., Letitia A. McDonald,* for appellee.

*Rusi C. Patel, Susan J. Moore,* amici curiae.