**FIFTH DIVISION
MCFADDEN, P. J.,
GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 13, 2023**

# In the Court of Appeals of Georgia

A22A1664. JACKSON COUNTY BOARD OF EDUCATION v.
CITY OF COMMERCE BOARD OF EDUCATION et al.

GOBEIL, Judge.

The Jackson County Board of Education ("Jackson County Board") filed a declaratory judgment action, seeking a declaration that a written agreement entered between it and the City of Commerce Board of Education ("Commerce Board") was currently in effect and enforceable. The trial court ultimately granted Commerce Board's motion to dismiss and/or for judgment on the pleadings, finding the agreement to be unenforceable under the Intergovernmental Contracts Clause, found at Art. XI, Sec. III, Par. I (a) of the Georgia Constitution. Jackson County Board has appealed, arguing that the trial court erred in granting judgment on the pleadings, as it alleged facts that could prove that the Agreement was valid as an intergovernmental

contract for the provision of services. For the reasons set forth below, we reverse the trial court's order.

The record here shows that Jackson County and the City of Commerce operate two separate school districts, each with its own board of education and its own source of revenue for funding education services through the collection of ad valorem property taxes. In 1995, Jackson County Board and Commerce Board, along with the City of Commerce, entered into a contract (the "Agreement") concerning students residing within one district who attend schools in the other district. The Agreement acknowledges that both Boards already are educating these so-called "crossover" students, and states explicitly that "it is the desire of the parties to this [Agreement] to contract with each other for the education of these students" as well as future crossover students. The Agreement was signed on January 17, 1995, and expressly expires on December 31, 2045 (a term of 50 years and 11.5 months).

The Agreement states that each Board shall be authorized, but not required to "provide educational services" to crossover students. Under the Agreement, the two Boards share tax revenue (specifically ad valorem taxes assessed and levied for the operation and maintenance of the school systems) based on the comparative "per pupil tax base" for each Board's jurisdiction. The Agreement includes formulas to

2

calculate the per pupil tax base and how tax money should flow to either Board (based on the number of students enrolled in school in each school district and the tax digest of each jurisdiction).

The parties operated under the Agreement until 2007, when the financial crisis changed the local economic situation, and the Agreement was suspended.[1] In the ensuing years, the school districts continued educating crossover students, but the Boards did not exchange tax revenue. In 2020, Jackson County Board requested that the parties resume performance under the Agreement; but, as relevant here, Commerce Board took the position that the Agreement was unenforceable. Accordingly, Jackson County Board filed a lawsuit,[2] seeking in pertinent part a declaratory judgment regarding whether the Agreement was enforceable by either party.[3] Commerce Board filed a motion to dismiss the complaint and for judgment on

[1] Commerce Board contends that the parties mutually abandoned the Agreement at this time, but at the motion-to-dismiss stage, the trial court considered as fact only that the parties had not performed under the Agreement since fiscal year 2005-2006.

[2] The City of Commerce was also named as a defendant in the suit, but the City is not a party to the instant appeal.

[3] Jackson County Board later amended its complaint to seek reformation of the Agreement to change the expiration date of the Agreement to December 31, 2044. Jackson County Board argued that this would reflect the parties' original intention for

the pleadings, arguing that the Agreement violates the Intergovernmental Contract Clause because it: (1) exceeds the 50-year limit on intergovernmental contracts; and (2) is not an agreement for the provision of services.[4]

After a hearing, the trial court granted judgment on the pleadings in Commerce Board's favor. The trial court found that the Agreement violated the Georgia Constitution because it was a revenue-sharing agreement, not a contract for the provision of services, and thus was prohibited under the Intergovernmental Contracts Clause of the Georgia Constitution.[5] Hence, the trial court dismissed Jackson County Board's declaratory judgment claim.

---

the Agreement to be of a duration of less than 50 years. The trial court ultimately dismissed Jackson County Board's reformation claim as moot. See infra footnote 5.

[4] The amended complaint also raised additional claims - if the Agreement was declared unenforceable, Jackson County Board sought the equitable return of monies paid to Commerce Board under the Agreement. However, those claims were not raised before the parties had oral argument on Commerce Board's motion to dismiss and/or for judgment on the pleadings, so the trial court did not rule on them and they are not at issue on appeal, as they remain pending below.

[5] The trial court also found that the Agreement violated the Intergovernmental Contracts Clause because it was for a term exceeding 50 years. The trial court stated that Jackson County Board's contract-reformation claim seeking to reform the Agreement to a term of less than 50 years would have survived the motion to dismiss; however, it was moot based on the court's other findings. Neither of these issues appear in Jackson County Board's enumerations of error on appeal and the parties agreed at oral argument that these issues are not at issue at this time.

4

Jackson County Board sought and received a certificate of immediate review and we granted its application for interlocutory review. The appeal originally was filed in the Supreme Court, which transferred it here, see Case No. S22I0721 (April 7, 2022). In its transfer order, the Supreme Court noted that "the arguments raised by [Jackson County Board] require the application of well settled constitutional principles as to the proper manner in which claims concerning the interpretation of [the Intergovernmental Contracts Clause] should be analyzed."

On appeal, Jackson County Board argues that the trial court erred in granting judgment on the pleadings. More specifically, it contends that it alleged facts that could prove that the Agreement was a contract for the provision of services as required by the Intergovernmental Contracts Clause. We agree.

"On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings to determine whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law." *Arbor Mgmt. Svcs., LLC v. Hendrix*, 364 Ga. App. 758, 765 (2) (875 SE2d 392) (2022) (citation and punctuation omitted). "The grant of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) is proper only where there is a complete failure to state a cause of action." Id. (citation and punctuation omitted). For purposes of such a motion, "all

5

well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false. But the trial court need not adopt a party's legal conclusions based on these facts." *BCM Constr. Group, LLC v. Williams*, 353 Ga. App. 811, 811-812 (840 SE2d 51) (2020) (citation and punctuation omitted).

Regarding intergovernmental contracts in Georgia, "the general rule is that a local government may not enter into a contract that lasts longer than that government's term of office." *City of Decatur v. DeKalb County*, 289 Ga. 612, 614 (713 SE2d 846) (2011) (citation and punctuation omitted). "The Intergovernmental Contracts Clause found in Art. IX, Sec. III, Par. I (a) of the 1983 Georgia Constitution provides an exception to that rule, and allows political subdivisions of the State to contract with one another or with other public agencies, so long as the term of the contract does not exceed 50 years." Id. (citation and punctuation omitted).

As always, our analysis on constitutional issues begins and ends with the State Constitution. The exact language of the Constitution, as relevant here, is as follows:

> The state, or any institution, department, or other agency thereof, and any . . . school district, or other political subdivision of the state may contract for any period not exceeding 50 years with each other . . . for joint services, for the provision of services, or for the joint or separate use of facilities or equipment; but such contracts must deal with

6

activities, services, or facilities which the contracting parties are authorized by law to undertake or provide.

Ga. Const. of 1983, Art. IX, Sec. III, Par. I (a).

As explained by our Supreme Court, "[t]his exception does not give the State and its institutions and subdivisions the authority to enter into any and every contract which they might in their discretion deem advisable." Id. (citation and punctuation omitted). Rather, relying on the language cited above, the Supreme Court has defined two requirements with which contracts between governmental entities must comply to fall under this exception: the contract at issue must (1) "involve the provision of services, or the joint or separate use of facilities or equipment" and (2) it must "deal with activities, services, or facilities which the contracting parties are authorized by law to undertake or provide." Id. (citation and punctuation omitted).

> Thus, the validity of the [Agreement] at issue in this case hinges on whether, *in substance*, it is for the provision of 'services' or 'the joint or separate use of facilities or equipment' authorized by law. If the language of the contract is plain, unambiguous, and capable of only one reasonable interpretation, that interpretation must control, and no construction of the contract is required or even permissible.

Id. (emphasis supplied).

Relying primarily on *City of Decatur*, supra, the trial court found that the Agreement at issue was an impermissible revenue-sharing agreement, as opposed to a contract for the provision of services. In *City of Decatur*, DeKalb County and several cities located within the county entered into a contract wherein they agreed to distribute funds generated by a special sales tax instituted under the Homestead Option Sales and Use Tax Act ("HOST"). 289 Ga. at 612. Our Supreme Court affirmed the trial court's finding that the contract violated the Intergovernmental Contracts Clause because the contract consisted solely of an agreement concerning how to distribute the HOST funds between the entities and how and where the entities could expend the funds. Id. at 614-615. The Supreme Court held that the contract did "not involve the joint or separate use of facilities," and could not "credibly be deemed an agreement for the provision of authorized 'services.'" Id. at 615 (citation and punctuation omitted). Rather, "[t]he focus and clear purpose of the agreement [was] to provide a formula for the distribution of the HOST revenues; simply, it is a revenue-sharing agreement." Id.

Here, the trial court found that the Agreement between Jackson County Board and Commerce Board was analogous to the revenue-sharing contract in *City of Decatur*, and was not a contract for the provision of services. Important to the trial

8

court's finding was that (1) the Boards already had been educating crossover students before the Agreement; (2) the Agreement authorized, but did not require either Board to educate crossover students; and (3) the Boards continued to educate crossover students while the Agreement was suspended. . The court noted expressly: "The parties were clearly not providing any services while the Agreement was in effect that they were not already providing prior to the Agreement or even after the Agreement was suspended." The trial court also examined Jackson County Board's policy as to crossover students, determining that it likewise showed that Jackson County did not consider itself obligated to accept a crossover student under the Agreement. These facts led the trial court to conclude that the Boards' provision of educational services to each other's students was not dependent upon the Agreement; thus the Agreement "was not truly an agreement for the provision of educational services."

However, simply because the Agreement was not the sole basis for the services being provided by the Boards does not demand the conclusive finding that the Agreement was not one "for" (from the Constitution) or "involving" (from the Supreme Court's interpretation of the Constitution) and "dealing with" the provision of services. The preamble of the Agreement states that it was the "desire of the parties . . . to contract with each other for the education of these students," and "therefore,

9

. . . the parties hereby enter into this agreement as follows[.]" Thus, the plain language of the Agreement confirms that its foundational purpose is to educate these (crossover) students, an authorized service.[6] That language contrasts with the contract in *City of Decatur*, which stated its purpose was (as explained by the Supreme Court) "to equalize the HOST tax reduction benefits to all DeKalb County citizens." 289 Ga. at 616 (citation and punctuation omitted). The *City of Decatur* agreement did not specify, much less mention any services (or use of facilities or equipment). Accordingly, we find the instant contract readily distinguishable from the one struck down in *City of Decatur*. See *J. P. Carey Enterprises, Inc. v. Cuentas, Inc.*, 361 Ga. App. 383, 391 (1) (b) (864 SE2d 588) (2021) ("we ascertain the intent of [contracting] parties by first looking to the language of the contract") (citation and punctuation omitted). Additionally, unlike the contract in *City of Decatur*, the Agreement here ties the revenue-sharing to the service being provided. Indeed, the Agreement provides that the taxes levied for the maintenance and operation of the school systems shall be divided among the Boards based upon the per pupil tax bases for both Boards. There is one method of dividing tax revenue when the County's per

---

[6] And, although the Boards may not have been obligated to educate every crossover student, neither party disputes that each Board did educate crossover students throughout the Agreement's term.

10

pupil tax base is higher, and another formula when the City's per pupil tax base is higher. And the per pupil tax base is tied directly to the number of students attending school in each district.

The trial court discounted such connection, reasoning "[u]nder all formulas in the Agreement, each Board is independently setting its millage rate and taxes upon taxable property within that Board's jurisdiction, and dividing and sharing the taxes within the 'shared area,' regardless of whether either Board has crossover students." And the trial court is correct that the per pupil tax base is not tied specifically to the number of crossover students. However, it is tied to the amount of taxes collected for the maintenance and operation of schools by each school system and the number of students attending schools in each district, thus clearly attempting to equalize the funding for each Board's schools based on the number of children being educated. And, as argued by Jackson County Board, the taxes being divided in this case may be used by the Boards only for the support of public schools.[7] Ga. Const. of 1983, Art.

_____

[7] We acknowledge that the contract at issue in *City of Decatur* contained a similar restriction; mandating that the governmental entities sharing tax revenue could use the funds only "for capital outlay projects to be located within the geographical boundaries of DeKalb County and to be owned, operated or both either by the County, one of more Municipalities or any combination thereof." 289 Ga. at 615 (punctuation omitted). The Supreme Court noted that "[t]he fact that the [contract] requires the Cities to expend the tax proceeds in accordance with the

11

VIII, Sec. 6, Par. 1 (providing that "[s]chool tax funds shall be expended only for the support and maintenance of public schools, public vocational-technical schools, public education, and activities necessary or incidental thereto"). These factors add support to our conclusion that Jackson County Board made a cognizable claim that the Agreement was one for the provision of services. Compare *Frazer v. City of Albany*, 245 Ga. 399, 400-401 (2) (265 SE2d 581) (1980) (contract between city and inner-city authority to fund the acquisition of a consultant and manager to oversee a construction project did not violate the Intergovernmental Contracts Clause) with *Greene County Sch. Dist. v. Greene County*, 278 Ga. 849, 851 (607 SE2d 881) (2005) (contract between county and school district to waive the county's commission on all taxes collected by the tax commissioner if the school district conveyed a piece of real estate to the county was not permissible under the Intergovernmental Contracts Clause; fact that tax collection services were related to the agreement did not covert

---

mandates of the [HOST Act] does not transform it into either a contract for services or one for the use of facilities." Id. at 615-616. However, as explained above, that the Boards may use the shared tax revenue only for the operation and maintenance of their respective schools is only one factor we find that supports Jackson County Board's claim that the Agreement is one for the provision of services. Unlike the agreement in *City of Decatur*, this Agreement expressly states its purpose is to provide education services and logically links the taxes being shared to the services being provided.

12

the real estate transaction into one for the provision of services). Further, the fact that both Boards continued to educate crossover students while the Agreement was suspended further supports Jackson County Board's argument that the true intent of the Agreement was to provide the service of educating students rather than share revenue.

Here, the Agreement involves a service that each contracting party is legally authorized to provide — the education of students within its public schools. And the Agreement lays out that, in furtherance of the purpose of providing that service, the parties will share tax revenue based on the taxes collected by and the number of students being educated by each respective Board. Accordingly, where the Agreement itself explicitly states that it is for the purpose of providing educational services to children who reside outside their school district's jurisdiction, and where the taxes being divided are tied to and earmarked by law for such service, we find that Jackson County Board pleaded facts that could prove that the Agreement is permissible under the Intergovernmental Contracts Clause, and we reverse the trial court's order granting judgment on the pleadings to Commerce Board. See *BCM Constr. Group*, 353 Ga. App. at 816 (1) ("[j]udgment on the pleadings should be granted only when "the moving party is clearly entitled to judgment") (citation and punctuation omitted);

13

*CoreVest American Finance Lender LLC v. Stewart Title Guar. Co.*, 358 Ga. App.

596, 600-601 (1) (854 SE2d 381) (2021) (factual disputes regarding the interpretation

of contract language precluded judgment on the pleadings).

*Judgment reversed. McFadden, P. J., and Land, J., concur*.