**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 5, 2024**

# In the Court of Appeals of Georgia

A23A1636. BALDWIN COUNTY v. DEPARTMENT OF
BEHAVIORAL HEALTH AND DEVELOPMENTAL
DISABILITIES FOR THE STATE OF GEORGIA et al.

DILLARD, Presiding Judge.

In 2021, Baldwin County filed suit against the Department of Behavioral Health
and Developmental Disabilities ("DBH") and its commissioner, claiming that DBH
had been assigned an intergovernmental contract, in which the former Department of
Human Resources ("DHR") paid the County to provide fire-protection services to
the state-owned Central State Hospital in Milledgeville, but DBH breached this
agreement by terminating it. DBH filed a motion to dismiss the complaint, arguing the
County's claims were barred by sovereign immunity. The trial court granted DBH's
motion as to the County's claims for breach of contract and injunctive relief, but
denied it as to the claims for mandamus and attorney fees. On appeal, the County

contends the trial court erred in ruling that DBH was (1) not assigned as successor to the contract by an act of the General Assembly, and (2) not authorized by law to provide fire protection services, rendering the contract invalid under the Intergovernmental Contracts Clause of the Georgia Constitution.[1] The County further contends the trial court's ruling that the contract did not apply to DBH violated the Georgia Constitution's Impairment Clause,[2] and that the court erred in denying its motion for summary judgment as moot. For the following reasons, we affirm.[3]

A motion to dismiss asserting sovereign immunity is based on the trial court's "lack of subject-matter jurisdiction, rather than the merits of the plaintiff's claim."[4] Put another way, sovereign immunity is not "an affirmative defense, going to the

---

[1] *See* Ga. Const. of 1983, Art. IX, Secc III, Par. I (a).

[2] *See* Ga. Const. of 1983, Art. I, Sec. 1, Par. X.

[3] Oral argument was held in this case on February 6, 2024, and is archived on the Court's website. See Court of Appeals of the State of Georgia, Oral Argument, Case No. A23A1636 (Feb. 6, 2024), available at https://vimeo.com/911641348?share=copy.

[4] *Alred v. Ga. Public Defender Council*, 362 Ga. App. 465, 465-66 (869 SE2d 99) (2022) (punctuation omitted); *see* OCGA § 9-11-12 (b) (1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may, at the option of the pleader, be made by motion in writing: (1) Lack of jurisdiction over the subject matter[.]").

merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case."[5] Significantly, a waiver of sovereign immunity "must be established by the party seeking to benefit from that waiver; thus, the plaintiffs have the burden of establishing waiver of sovereign immunity."[6] And consequently, when reviewing a trial court's ruling on a motion to dismiss on this basis, we do so "de novo while sustaining factual findings if they are supported by any evidence."[7]

With the foregoing in mind, the record shows that in 1999, Baldwin County and DHR entered into a long-term contract, in which DHR paid $550,000 annually for the County to provide fire-protection services to the state-owned and operated Central State Hospital in Milledgeville. Ten years later, the Georgia General Assembly

---

[5] *Alred*, 362 Ga. App. at 466 (punctuation omitted); *see Polo Golf and Country Club Homeowners Ass'n, Inc. v. Cunard*, 306 Ga. 788, 790 (1) (a) (833 SE2d 505) (2019) ("Sovereign immunity is a threshold determination that must be ruled upon prior to the case moving forward on the more substantive matters."), *overruled on other grounds by Cobb Cnty. v. Floam*, ___ Ga. ___ (Case No. S24A0599; decided May 9, 2024).

[6] *Alred*, 362 Ga. App. at 466 (punctuation omitted); *see Ga. Dep't of Lab. v. RTT Assocs., Inc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016) ("The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it.").

[7] *Alred*, 362 Ga. App. at 466 (punctuation omitted); *see RTT Assocs., Inc.*, 299 Ga. at 81 (1) ("Whether sovereign immunity has been waived under the undisputed facts of this case is a question of law, and this Court's review is de novo.").

reorganized various state agencies, eliminating DHR, creating DBH, and reestablishing the Department of Community Health ("DCH").[8] Under this statutory reorganization, the various responsibilities of the now-defunct DHR were assigned to other agencies, including DBH and DCH.[9] Specifically, the General Assembly assigned DHR's powers, functions, and duties "relating to the Division of Mental Health, Developmental Disabilities, and Addictive Diseases" to DBH.[10] And as part of the transfer of DHR's responsibilities to the newly created DBH, the General Assembly provided in OCGA § 37-1-5 (b) that

> [t]he rights, privileges, entitlements, and duties of parties to contracts, leases, agreements, and other transactions entered into before July 1, 2009, by [DHR] which relate to the functions transferred to [DBH] pursuant to Code Section 37-1-4 shall continue to exist; and none of these rights, privileges, entitlements, and duties are impaired or diminished by reason of the transfer of the functions to [DBH]. In all such instances, [DBH] shall be substituted for [DHR], and [DBH] shall succeed to the rights and duties under such contracts, leases, agreements, and other transactions.

---

[8] *See* Ga. L. 2009, Act 102.

[9] *Id.*

[10] *See* OCGA § 37-1-4 (a).

Additionally, the General Assembly assigned some of DHR's responsibilities to DCH. Significantly, prior to DHR's elimination in 2009, Title 25, Chapter 3 of the Georgia Code, concerning fire protection by local fire departments generally, designated DHR as one of the few state-level agencies that also had fire-protection duties under OCGA § 25-3-6:

> This article shall not affect the duties, powers, or responsibilities of the Safety Fire Commissioner, the state fire marshal, the sheriff's office, the Department of Public Safety, local law enforcement agencies, the Department of Agriculture, the Department of Natural Resources, the Georgia Forestry Commission, the Department of Transportation, the Department of Defense, or *the Department of Human Resources*.[11]

But following the 2009 agency restructuring, this statute was amended, substituting DCH as the specific agency replacing DHR.[12] And with further respect to DCH, in OCGA § 31-2-5 (d), the General Assembly provided:

> The rights, privileges, entitlements, and duties of parties to contracts, leases, agreements, and other transactions entered into before July 1,

---

[11] OCGA § 25-3-6 (2008) (emphasis supplied).

[12] *See* Ga. L. 2009, Act 102; OCGA § 25-3-6 (2009). This statute was amended again in 2011, with DCH being replaced by the Department of Public Health. *See* Ga. L. 2011, 244, § 6-3.

2009, by any predecessor agency or unit and which pertain to the functions transferred to the department by this chapter shall continue to exist; and none of these rights, privileges, entitlements, and duties are impaired or diminished by reason of the transfer of the functions to the department. In all such instances, the Department of Community Health shall be substituted for the predecessor agency or unit, and the Department of Community Health shall succeed to the rights and duties under such contracts, leases, agreements, and other transactions.

Despite this legislative shifting of agency responsibilities, for the next ten years, DBH continued performing under the original contract between the now-dissolved DHR and the County, remitting annual payments for the County's provision of fire-protection services for Central State Hospital. But on September 16, 2020, the then-commissioner of DBH sent the County written notice that the agency was terminating the agreement, citing budget cuts and reduction of staff/patients at Central State Hospital. Shortly thereafter, the County responded via letter, disagreeing with DBH's decision and asserting that the state agency was attempting to terminate a valid contract without legitimate reasons for doing so. Even so, as stated in its written notice, DBH ceased making payments to the County in October 2020.

Subsequently, on July 15, 2021, the County filed suit against DBH and its commissioner, seeking damages, injunctive relief, specific performance, mandamus, and attorney fees based on allegations that DBH breached a valid intergovernmental contract when it ceased making payments under the agreement. DBH filed an answer, and a few months later, the agency filed a motion to dismiss the complaint, arguing the County's claims were barred by sovereign immunity. Extensive briefing on the issue ensued, and the trial court ultimately held a hearing. After the hearing, the trial court granted DBH's motion as to the County's claims for breach of contract and injunctive relief, but denied it as to the claims for mandamus and attorney fees. This appeal follows.

1. Although separated into several enumerations, the County essentially contends the trial court erred in ruling that no valid intergovernmental contract existed between the County and DBH and, as a result, sovereign immunity barred the County's claims for breach of contract and injunctive relief. We disagree.

The Constitution of the State of Georgia provides that "sovereign immunity extends to the state and all of its departments and agencies and that the State's sovereign immunity can only be waived by a constitutional provision or an act of the

General Assembly that specifically provides for such a waiver and the extent thereof."[13] And one of the exceptions to the defense of sovereign immunity is "for any action ex contractu for the breach of any written contract entered into by the state or its departments and agencies."[14] But to satisfy this burden, the plaintiff must show that "the contract sought to be enforced is in writing and contains all of the terms necessary to constitute a valid contract."[15] And here, the County argues it was a party

---

[13] *State v. Fed. Def. Program, Inc.*, 315 Ga. 319, 326-27 (3) (882 SE2d 257) (2022) (punctuation omitted); *see* Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e) ("Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.").

[14] *Fed. Def. Program, Inc.*, 315 Ga. at 327 (3) (punctuation omitted); *see* Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c) ("The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies."); *see also* OCGA § 50-21-1 (a) ("The defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract . . . entered into by the state, departments and agencies of the state, and state authorities.").

[15] *Fed. Def. Program, Inc.*, 315 Ga. at 327 (3) (punctuation omitted); *accord Ga. Dep't of Community Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 685 (1) (722 SE2d 403) (2012).

to a valid intergovernmental contract with DBH, despite DHR's dissolution, and the trial court erred in ruling otherwise. So, we turn our attention to that issue.

In Georgia, the general rule regarding intergovernmental contracts is that a local government "may not enter into a contract that lasts longer than that government's term of office."[16] But the Intergovernmental Contracts Clause found in Article IX, Section III, Paragraph I (a) of the 1983 Georgia Constitution "provides an exception to that rule, and allows political subdivisions of the State to contract with one another or with other public agencies, so long as the term of the contract does not exceed 50 years."[17] Specifically, Article IX, Section III, Paragraph I (a) provides:

> The state, or any institution, department, or other agency thereof, and any county, municipality, school district, or other political subdivision of the state may contract for any period not exceeding 50 years with each other or with any other public agency, public corporation, or public authority for joint services, for the provision of services, or for the joint or separate use of facilities or equipment; but such contracts must deal

---

[16] *Jackson Cnty. Bd. of Educ. v. City of Commerce Bd. of Educ.*, 366 Ga. App. 762, 765 (884 SE2d 147) (2023) (punctuation omitted); *accord City of Decatur v. DeKalb Cnty.*, 289 Ga. 612, 614 (713 SE2d 846) (2011).

[17] *Jackson Cnty. Bd. of Educ.*, 366 Ga. App. at 765 (punctuation omitted); *accord City of Decatur*, 289 Ga. at 614.

with activities, services, or facilities which the contracting parties are authorized by law to undertake or provide.

But this exception does not give the State and its institutions and subdivisions the authority to "enter into any and every contract which they might in their discretion deem advisable."[18] Rather, construing the foregoing constitutional text, the Supreme Court of Georgia has held that an agreement must meet two requirements—*i.e.*, "involve the provision of services, or the joint or separate use of facilities or equipment and deal with activities, services, or facilities *which the contracting parties are authorized by law to undertake or provide*."[19]

Here, DBH argued—and the trial court agreed—that the contract was invalid because the County failed to show it involved services DBH was authorized by law to provide. And in light of the 2009 statutes eliminating DHR and creating DBH, we are similarly persuaded. Indeed, affording the text of those statutes their plain and

---

[18] *Jackson Cnty. Bd. of Educ.*, 366 Ga. App. at 765 (punctuation omitted); *accord City of Decatur*, 289 Ga. at 614.

[19] *City of Decatur*, 289 Ga. at 614 (punctuation omitted) (emphasis supplied); *accord Greene Cnty. School Dist. v. Greene Cnty.*, 278 Ga. 849, 851 (607 SE2d 881) (2005); *Jackson Cnty. Bd. of Educ.*, 366 Ga. App. at 765.

ordinary meaning,[20] the General Assembly explicitly assigned DHR's powers, functions, and duties "relating to the Division of Mental Health, Developmental Disabilities, and Addictive Diseases"[21] to DBH. And while OCGA § 37-1-5 (b) assigned some of former DHR's contract responsibilities to DBH, it did so only with regard to those "which relate to the functions transferred to [DBH]."[22] Significantly, those functions did *not* include fire-protection services. Thus, while it is certainly true that, prior to its elimination, DHR was one of the few state-level agencies granted authority to provide fire-protection services, the statutory basis for that duty after DHR was eliminated explicitly substituted *DCH* to fulfill DHR's former role[23]—leading to the *textual* inference that DBH was *not* granted similar authority.[24]

---

[20] *See Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (explaining that in construing the meaning of a statute, we must afford the statutory text its "plain and ordinary meaning"); *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014) (same); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words . . . .").

[21] *See* OCGA § 37-1-4 (a).

[22] *See* OCGA § 37-1-5 (b)

[23] *See* Ga. L. 2009, Act 102; OCGA § 25-3-6 (2009).

[24] *See Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (explaining "expressio unius est exclusio alterius (expression of one thing implies exclusion of another) and expressum facit cessare tacitum (if some things are expressly

11

In fact, as the trial court acknowledged, none of the relevant 2009 statutory provisions—eliminating DHR, creating DBH, and reestablishing DCH—granted DBH the authority to provide fire-protection services. Moreover, the only specific mention of Central State Hospital within the article outlining the powers and duties of DBH makes no reference to fire-protection services.[25] Given these circumstances, the trial court did not err in ruling that sovereign immunity barred the County's claims for breach of contract and injunctive relief on the ground that DBH lacked authority to provide fire-protection services; and so no valid intergovernmental contract exists between the County and DBH regarding such services.[26]

---

mentioned, the inference is stronger that those not mentioned were intended to be excluded)" (emphasis and punctuation omitted)); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107-108 (2012) (general textual application).

[25] *See* OCGA § 37-1-26 (a) ("The department shall sell, to the best advantage, all surplus products of the Central State Hospital or other institutions under the control and supervision of the department and shall apply the proceeds thereof to the maintenance of the institution from which such surplus products are received.").

[26] *See Greene Cnty. School Dist.*, 278 Ga. at 851 (holding county board of education's agreement to convey property to county in exchange for reduction in county's commission for collecting taxes for the board was not a valid intergovernmental contract because, *inter alia*, board of commissioners was not authorized by law to undertake a contract affecting tax collection service). Although not specifically argued by the County, DBH's performance on the agreement for ten

2. The County further contends the trial court's ruling that the contract did not apply to DBH violated the Georgia Constitution's Impairment Clause. Once again, we disagree.

The Impairment Clause of the Constitution of the State of Georgia, Article I, Section 1, Paragraph X, provides: "No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed." And to determine whether there has been a violation of Georgia's Impairment Clause, we consider whether "a vested right exists and then whether that vested right has been 'injuriously affected' by the law in question."[27]

---

years following the elimination of DHR did not result in a waiver of sovereign immunity. *Cf. RTT Assocs., Inc.*, 299 Ga. at 82 (2) (explaining "[g]eneral rules of contract law that might otherwise support a claim for breach of contract damages between private parties, however, will not support a claim against the state or one of its agencies if the contract is not in writing so as to trigger the waiver of sovereign immunity.").

[27] *Polo Golf and Country Club Homeowners Ass'n, Inc.*, 306 Ga. at 793-94 (2) (b) (punctuation omitted); *see Wood v. Barnes*, 318 Ga. 300, 304 (2) (898 SE2d 448) (2024) ("Establishing a violation of Georgia's impairment clause, under either a theory of contractual impairment or a theory of retroactivity, requires the complaining party to show that a vested right is at stake." (punctuation omitted)); *City of Waycross v. Bennett*, 356 Ga. App. 713, 718 (1) (849 SE2d 33) (2020) (holding "the Impairment Clause was not violated because the plaintiffs never had a vested right in the

Here, it is undisputed that, prior to 2009, the County had a valid intergovernmental contract with DHR. But as previously discussed, following the General Assembly's elimination of DHR and reorganization of various state agencies, the responsibility to perform under that contract was not assigned to DBH. Rather, the plain language of the various reorganization statutes seems to indicate that this responsibility was assigned, at least initially, to DCH.[28] Accordingly, in light of this statutory context, and applying the canon that "[s]tatutes should be interpreted to avoid serious constitutional concerns where such an interpretation is reasonable[,]"[29]

---

health-insurance benefits at issue.").

[28] *See supra* note 12 & accompanying text; OCGA § 31-2-5 (d); OCGA § 31-2A-3 (b) ("The rights, privileges, entitlements, and duties of parties to contracts, leases, agreements, and other transactions as identified by the Office of Planning and Budget entered into before July 1, 2011, by the Department of Community Health which relate to the functions transferred to the Department of Public Health pursuant to Code Section 31-2A-2 shall continue to exist; and none of these rights, privileges, entitlements, and duties are impaired or diminished by reason of the transfer of the functions to the Department of Public Health. In all such instances, the Department of Public Health shall be substituted for the Department of Community Health, and the Department of Public Health shall succeed to the rights and duties under such contracts, leases, agreements, and other transactions.").

[29] *Stone v. Stone*, 297 Ga. 451, 454-55 (774 SE2d 681) (2015) (punctuation omitted); *see Premier Health Care Inv., LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 48-49 (3) (e) (849 SE2d 441) (2020) (applying the canon of constitutional doubt, which militates against not only those interpretations that would render the statute

the Georgia Constitution's Impairment Clause is not violated because the agreement does not apply to or bind DBH, as the contract seemingly was assigned to another agency.[30]

3. Finally, the County contends the trial court erred in denying its motion for partial summary judgment on its breach-of-contract claim as moot. But given our holding that the trial court did not err in granting DBH's motion to dismiss, this issue is indeed moot.

For all these reasons, the trial court's judgment is affirmed.

*Judgment affirmed. Brown and Padgett, JJ., concur.*

---

unconstitutional, but also those that would even raise serious questions of constitutionality to avoid raising issue of General Assembly's delegation of power in statute).

[30] *See Hines v. Etheridge*, 173 Ga. 870, 874-75 (5) (162 SE 113) (1931) (holding statute providing for merger of Campbell County into Fulton County was not void as impairing obligation of contracts of merged county because statute provided for enlarged county's assuming merged county's obligations).