318 Ga. 300
FINAL COPY

S23A0821.  WOODS et al. v. BARNES et al.
S23A0822.  BEARDEN et al. v. BARNES et al.

COLVIN, Justice.

The Fair Dismissal Act ("FDA"), codified within Title 20 of the Georgia Code, affords public school teachers who have "accept[ed] a school year contract for the fourth consecutive school year from the same local board of education" certain protections against demotion and the nonrenewal of their contracts. OCGA § 20-2-942 (b) (1). Among other things, the FDA provides that such a teacher "may be demoted or the teacher's contract may not be renewed only for those reasons set forth in [OCGA § 20-2-940 (a)]," id., including "[i]ncompetency," "[i]nsubordination," and "[w]illful neglect of duties," OCGA § 20-2-940 (a), and that, prior to the demotion or nonrenewal of such a teacher's contract, the teacher is entitled to notice and an opportunity for a hearing, see OCGA § 20-2-942 (b) (2).

The Charter Schools Act of 1993, however, included a waiver

provision that relieved public schools that had converted into public charter schools of the obligation to comply with Title 20. See Ga. L. 1993, p. 1440, § 1. And that Title 20 waiver remains part of Georgia's statutory scheme today under the Charter Schools Act of 1998, see Ga. L. 1998, pp. 1082, 1086, § 3, as amended by the Charter Systems Act of 2007, see Ga. L. 2007, pp. 185, 191, § 8. Specifically, as amended by the Charter Systems Act, the Charter Schools Act's waiver provision states that "a charter school, or for charter systems, each school within the system, shall not be subject to the provisions of [Title 20 of the Georgia Code]," and that "[a] waiver granted pursuant to this Code section for a charter system shall apply to each system charter school within the system." OCGA § 20-2-2065 (a).

This case involves challenges to the Charter Schools Act's waiver provision, as amended by the Charter Systems Act, under the Georgia Constitution's Impairment Clause, which prohibits retroactive laws and laws that impair the obligation of contracts. See Ga. Const. of 1983, Art. I, Sec. I, Par. X (providing that "[n]o . . .

retroactive law, or laws impairing the obligation of contract . . . shall be passed"). Specifically, public school teacher Rebecca Barnes and the Georgia Association of Educators ("Plaintiffs") claim that the amended version of the waiver provision, as applied to Fannin County School System ("FCSS") educators who earned FDA protections after the enactment of the first Charter Schools Act in 1993 but before the FCSS converted into a charter school system in 2015, unconstitutionally impaired such teachers' vested property rights and contract rights under the FDA.

We hold that, as presented, Plaintiffs' constitutional claims fail as a matter of law. Plaintiffs' claims necessarily presume that the grant of a Title 20 waiver to charter schools within the FCSS pursuant to the 2007 Charter Systems Act prevented FCSS educators who had earned FDA rights between the enactment date of the 1993 Charter Schools Act and the date that the FCSS converted into a charter system in 2015 from enforcing those rights

against the FCSS.[1] Assuming without deciding that this presumption is true, a grant of a Title 20 waiver for the FCSS did not impair any rights belonging to such teachers. As explained below, when the General Assembly first authorized the creation of public charter schools through the Charter Schools Act of 1993, it granted charter schools a waiver from their obligation to comply with Title 20. That waiver qualified any rights teachers could subsequently earn under Title 20, clarifying that any such rights were not enforceable against charter schools. And later versions of, and amendments to, the Charter Schools Act, including the Charter Schools Act of 1998, as amended by the Charter Systems Act of 2007, have not materially changed the waiver provision. Thus, to the extent that Georgia statutory law imposed limitations on teachers'

---

[1] Plaintiffs' Impairment Clause claims — that a "retroactive *law*" or a "*law*[ ] impairing the obligation of contract" was "passed," Ga. Const. of 1983, Art. I, Sec. I, Par. X (emphasis supplied) — are necessarily premised on the assumption that the Charter Systems Act's waiver provision granting a Title 20 waiver to charter schools within a charter system (the law at issue) waives the obligation of a charter system, which employs teachers, to abide by the FDA. Absent such an assumption, Plaintiffs could not point to a *law* that impaired FCSS teachers' rights. Because we can resolve the issues on appeal without resolving whether the necessary assumption underlying Plaintiffs' claims is correct, we express no view on that matter.

FDA rights, it was the 1993 Charter Schools Act that imposed those limitations, not, as Plaintiffs claim, the 2007 Charter Systems Act. Because we conclude that Plaintiffs' Impairment Clause claims fail as a matter of law, we reverse the judgment of the trial court.

In reaching this conclusion, we express no opinion as to whether the waiver provisions of the 1993 Charter Schools Act, the 1998 Charter Schools Act, or the 2007 Charter Systems Act violate the Georgia Constitution's Impairment Clause as applied to teachers who earned FDA protections before the enactment of the 1993 Charter Schools Act. This is because the record on appeal does not show that the class of teachers employed by the FCSS on whose behalf the Georgia Association of Educators sued in this case includes any such teachers; Plaintiffs have not raised any arguments specific to any such teachers; and, despite State Defendants conceding that "it is at least conceivable that a teacher who gained Fair Dismissal Act protections prior to 1993 could have mounted a retroactivity challenge to the original Charter Schools Act," Plaintiffs have insisted that they are not claiming that the

5

Charter Schools Act of 1993 or of 1998 unconstitutionally impaired FCSS teachers' FDA rights.[2]

1. In 2018, Plaintiffs filed suit against state and local education officials in their individual capacities ("State Defendants" and "Local Defendants," respectively). In their amended complaint, Plaintiffs alleged that Barnes accepted a fourth consecutive contract of employment with the Fannin County Board of Education at the beginning of the 2003-2004 school year and worked for the FCSS through the 2016-2017 school year; the FCSS converted into a charter school system with the approval of the local and state boards of education in 2015; the charter agreement governing the FCSS granted the FCSS "the maximum flexibility allowed by state law from the provisions of Title 20" pursuant to the Charter Systems Act

---

[2] Specifically, Plaintiffs state that "the relevant law — the law that purportedly authorized the stripping of [plaintiff-teacher] Barnes's FDA rights — is the Charter *Systems* Act of *2007*"; "the relevant statutory provisions here — the ones against which Plaintiffs' as-applied challenge is directed — are (and have been throughout this litigation) those of the Charter *Systems* Act of 2007, and never the 1993 iteration of the Charter Schools Act"; and "State Defendants erroneously suggest that the law at issue here is the Charter Schools Act, first piloted in 1993 and then comprehensively revamped in 1998." (Emphasis in original.)

of 2007; the FCSS notified Barnes in May 2017 that her contract of employment would not be renewed for the 2017-2018 school year; the notice did not provide the reasons for the nonrenewal of Barnes's contract or an opportunity for a hearing, as required by the FDA; and Barnes's employment terminated at the end of the 2016-2017 school year. Plaintiffs asserted that, by terminating Barnes without honoring the FDA rights she had earned prior to the FCSS's conversion into a charter system in 2015, the FCSS, acting pursuant to its charter with the State Board of Education, "inflicted injurious retroactive effects on Barnes's vested rights" and "impaired Barnes's contractual rights" in violation of the Georgia Constitution's Impairment Clause. As relief, Plaintiffs sought declarations that Barnes's termination and the FCSS's operation as a charter school system without preserving previously-earned FDA rights violated the Georgia Constitution's Impairment Clause, an injunction compelling the FCSS to reinstate Barnes with back pay and to honor her FDA rights, and an order enjoining the FCSS and the State Board of Education from denying FDA rights to educators employed

7

by the FCSS who had earned FDA protections before the FCSS's conversion into a charter school system.[3]

Following an appeal to the Court of Appeals and a remand, see generally *Barnes v. Bearden*, 357 Ga. App. 99 (850 SE2d 181) (2020), State Defendants filed a renewed motion to dismiss for failure to state a claim, Plaintiffs filed a motion for summary judgment, and Local Defendants filed a cross-motion for summary judgment. On February 1, 2023, the trial court ruled in favor of Plaintiffs and against Defendants, denying State Defendants' renewed motion to dismiss, granting Plaintiffs' motion for summary judgment, and denying Local Defendants' cross-motion for summary judgment. In short, the trial court concluded that the FDA afforded Barnes and similarly situated FCSS teachers certain property and contractual rights that vested before the FCSS converted into a charter system in 2015; that, as applied to those teachers, the 2007 Charter Systems Act's waiver provision impaired those FDA rights; and that, by

---

[3] The Georgia Association of Educators sued on behalf of their members working at FCSS schools who were "similarly situated" to Barnes.

8

waiving FDA rights, the Charter Systems Act violated the Georgia Constitution's prohibition on the passage of retroactive laws and laws impairing contracts. Consistent with these rulings, the trial court declared the Charter Systems Act's waiver provision unconstitutional as applied to FCSS educators who had earned FDA rights prior to FCSS's conversion into a charter school system, permanently enjoined Defendants from enforcing the Charter Systems Act's FDA-waiver provision against Barnes and educators employed by FCSS who had earned protections of the FDA prior to the FCSS's conversion into a charter school system, and ordered Defendants to reinstate Barnes's employment. State and Local Defendants each appealed from the trial court's order, and their appeals have been docketed as Case Nos. S23A0821 and S23A0822, respectively.

2. The Georgia Constitution's Impairment Clause provides that "[n]o . . . retroactive law, or laws impairing the obligation of contract . . . shall be passed." Ga. Const. of 1983, Art. I, Sec. I, Par. X. This Clause "forbids statutes that apply retroactively so as to

injuriously affect the vested rights of citizens." *Deal v. Coleman*, 294 Ga. 170, 175 (2) (751 SE2d 337) (2013) (citation and punctuation omitted). "Establishing a violation of Georgia's impairment clause, under either a theory of contractual impairment or a theory of retroactivity, requires the complaining party to show that a vested right is at stake." *Polo Golf & Country Club Homeowners Assn., Inc. v. Cunard*, 306 Ga. 788, 793 (2) (b) (833 SE2d 505) (2019). "To determine whether there has been a violation of Georgia's impairment clause, courts in this state will consider whether a vested right exists and then whether that vested right has been injuriously affected by the law in question." Id. at 793-794 (2) (b) (citation and punctuation omitted).

Here, as presented, Plaintiffs' Impairment Clause claims fail as a matter of law, and the trial court erred in concluding otherwise. The problem with Plaintiffs' claims is that they rely on the FDA as the source of the rights that they assert were impaired by the Charter Systems Act, but, as explained below, Plaintiffs ignore the FDA's statutory and historical context in construing the nature of

the rights afforded by the FDA. And that context shows that the passage of the Charter Schools Act of 1993 qualified any rights earned between that Act's enactment date and the FCSS's conversion into a charter system.

As we have explained, when interpreting a statutory provision, "[w]e must give the statutory text its plain and ordinary meaning, . . . reading it in its most natural and reasonable way." *In the Interest of T. B.*, 313 Ga. 846, 850 (3) (874 SE2d 101) (2022) (citation and punctuation omitted). To that end, and because "the primary determinant of a text's meaning is its context," *Camp v. Williams*, 314 Ga. 699, 703 (2) (b) (879 SE2d 88) (2022) (citation and punctuation omitted), we interpret statutory text "in the context in which it appears," including "the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question," *Ford Motor Co. v. Cosper*, 317 Ga. 356, 359 (2) (893 SE2d 106) (2023) (citations and punctuation omitted). And we seek to "construe[ ] together and harmonize[ ]" the statute in

11

question with other "statutes relating to the same subject matter." *In the Interest of T. B.*, 313 Ga. at 853 (3) (citation and punctuation omitted).

As explained below, applying these principles, we conclude that, even assuming that FCSS teachers like Barnes earned FDA rights after the enactment of the 1993 Charter Schools Act that vested before FCSS's conversion into a charter system in 2015, the Charter Systems Act did not injuriously affect those rights. This is because the 1993 Charter Schools Act waived any obligation that charter schools otherwise would have had to comply with the FDA, clarifying that teachers could subsequently earn at most qualified FDA rights that were not enforceable against charter schools. And the Charter Systems Act did not materially change the Charter Schools Act's waiver provision. Thus, assuming without deciding that, as Plaintiffs presume, the Charter Systems Act's provision granting a Title 20 waiver to charter schools within a charter system relieves the school system of the obligation to comply with the FDA, the Charter Systems Act did not impair any FDA rights belonging

12

to such teachers.

(a) In determining what rights the FDA affords teachers, we begin with the language of the FDA itself. See *State v. Henry*, 312 Ga. 632, 636 (3) (a) (864 SE2d 415) (2021) ("[W]e look first to the plain language of the statute . . . ."). The relevant provisions of the FDA state that "[a] teacher who accepts a school year contract for the fourth consecutive school year from the same local board of education may be demoted or the teacher's contract may not be renewed only for those reasons set forth in subsection (a) of Code Section 20-2-940"; that, "[i]n order to demote or fail to renew the contract of a teacher who accepts a school year contract for the fourth or subsequent consecutive school year from the same local board of education, the teacher must be given written notice of the intention to demote or not renew the contract of the teacher"; and that, before a teacher who has accepted a fourth or subsequent school year contract from the same local board of education can "be demoted or [have] his or her contract . . . not be renewed," the teacher "has the right to the procedures set forth in subsections (b)

13

through (f) of Code Section 20-2-940," including an opportunity for a hearing. OCGA § 20-2-942 (b) (1), (2).

As these provisions illustrate, the FDA speaks in general terms about employment protections enjoyed by teachers who accept a fourth consecutive school year contract from the same local school board. As a result, reading these provisions in isolation might lead one to conclude that the FDA affords such teachers unqualified rights.

However, "as we have said many times before when interpreting legal text, we do not read [that text] in isolation, but rather in context." *Camp*, 314 Ga. at 703 (2) (b) (citation and punctuation omitted). And as explained below, reading the FDA in its historical context, alongside the development of the Charter Schools Act, reveals that the Charter Schools Act of 1993 qualified any rights teachers could subsequently earn under the FDA.

The FDA was enacted in 1975 to, among other things, "define the grounds for termination of the contracts of [public-school] teachers . . . having a contract for a definite term." Ga. L. 1975, p.

14

360. Specifically, Section 1 (a) of the FDA provided that "[t]he contract of employment of a teacher . . . having a contract for a definite term may be *terminated or suspended*" only for certain enumerated reasons, including, for example, "[i]ncompetency," "[i]nsubordination," or "[w]illful neglect of duties." Ga. L. 1975, p. 360, § 1 (emphasis supplied).[4]

In 1982, the FDA was amended to afford additional protections to teachers who accepted a fourth consecutive school year contract from the same local school board. As amended in 1982, the FDA provided that the enumerated grounds for terminating or suspending a teacher were also the sole grounds on which such a teacher could be demoted or the teacher's contract could not be renewed for a subsequent school year. See Ga. L. 1982, pp. 2188, 2190, § 1 ("A teacher who accepts a school year contract for the fourth consecutive school year from the same local board of education may be demoted or the teacher's contract may not be

---

[4] This provision is currently codified at OCGA § 20-2-940 (a) with minor alterations not relevant here.

15

renewed only for those reasons set forth in subsection (a) of Section 1 of this Act."). As noted above, this provision of Title 20 is now codified at OCGA § 20-2-942 (b) (1) with minor alterations not relevant here.

The 1982 amendment also afforded teachers who accepted a fourth consecutive school year contract from the same local board certain rights to notice and a hearing before being demoted or not having their contracts renewed for a subsequent school year. See Ga. L. 1982, pp. 2188, 2190-2191, § 1 ("A teacher who accepts a school year contract for the fourth consecutive school year from the same local board of education and who is notified that he or she is to be demoted or that his or her contract will not be renewed has the right to the procedures set forth in subsections (b) through (f) of Section 1 of this Act before the intended action is taken."). While this provision has been amended over the years, the current version of the FDA continues to afford teachers these general rights, as noted above. See OCGA § 20-2-942 (b) (2).

In 1993, the General Assembly enacted the first Charter

16

Schools Act, a statutory scheme within Title 20 of the Georgia Code that authorized the creation of public charter schools governed by "a binding performance based contract approved by both state and local boards of education, called a charter." Ga. L. 1993, pp. 1440-1441, § 1. The Charter Schools Act of 1993 permitted individual public schools to convert into public charter schools and waived the requirement that charter schools comply with Title 20's requirements, providing that "[e]ach performance based contract will exempt a school from state and local rules, regulations, policies, and procedures and from the provisions of this title according to the terms of the contract." Id. Thus, under the plain terms of the 1993 Charter Schools Act, charter schools were not required to comply with the provisions of Title 20, including the FDA. See id. See also Ga. L. 1993, pp. 1440, 1445, § 3 ("All laws and parts of laws in conflict with this Act are repealed.").

The Charter Schools Act of 1998 repealed and replaced the 1993 law. See Ga. L. 1998, pp. 1080, 1082, §§ 1, 3. Like the 1993 law, however, the 1998 law authorized individual public schools to

17

convert into public charter schools governed by a "performance based [charter] contract approved by both state and local boards of education." Ga. L. 1998, p. 1082, § 3. And like the 1993 law, the 1998 Charter Schools Act waived the requirement that charter schools comply with Title 20's requirements, providing that, "[e]xcept as provided in this article and in the charter, a charter school shall not be subject to the provisions of this title." Ga. L. 1998, p. 1086, § 3.

Although the language of the Charter Schools Act's waiver provision was amended in 2002 and again in 2005, the Charter Schools Act continued to grant charter schools a waiver from Title 20's provisions, including the provisions of the FDA. See Ga. L. 2002, pp. 388, 391, § 1 (providing that the local and state boards could "waive, as sought by the petitioner, specifically identified state and local rules, regulations, policies, and procedures, and provisions of this title other than the provisions of this article"); Ga. L. 2005, pp. 798, 808, § 12 ("Except as provided in this article or in a charter, a charter school shall not be subject to the provisions of this title . . . .").

18

Then, in 2007, the General Assembly passed the Charter Systems Act, which amended the Charter Schools Act to provide that local public school systems could convert into public charter systems, meaning that charter conversion was available for entire systems of schools and was no longer limited to individual schools. See Ga. L. 2007, pp. 185, 188, § 5. The Charter Systems Act also amended the Charter Schools Act to clarify that the waiver of Title 20 requirements applied not only to individual charter schools that had converted from public schools but also to each individual charter school within a school system that had converted into a charter school system. See Ga. L. 2007, p. 191, § 8 ("Except as provided in this article or in a charter, a charter school, or for charter systems, each school within the system, shall not be subject to the provisions of this title . . . . A waiver granted pursuant to this Code section for a charter system shall apply to each system charter school within the system."); OCGA § 20-2-2065 (a) (same).

As this statutory history reveals, when the General Assembly first authorized the creation of charter schools with the enactment

of the 1993 Charter Schools Act, it clarified that charter schools were exempt from Title 20's requirements, including any requirements that might otherwise be imposed on public schools by the FDA. Thus, even assuming that the FDA granted teachers who accepted a fourth consecutive school year contract from the same local board unqualified rights to the employment protections specified in the FDA *before* the 1993 Act's passage, that was no longer the case *after* the 1993 Act's passage. Cf. *GeorgiaCarry.Org, Inc. v. Atlanta Botanical Garden, Inc.*, 306 Ga. 829, 835 (3) (834 SE2d 27) (2019) (noting that a 2014 amendment to OCGA § 16-11-127 (c) "limited the [statutory] right to exclude the carrying of firearms to only those who own or lease 'private property,'" although "that [statutory] right was not always thus limited"). Teachers who earned FDA rights by accepting a fourth consecutive school year contract from the same local board after the 1993 Charter Schools Act was enacted earned at most qualified rights — rights that were not enforceable against charter schools. And Georgia law has remained consistent on this point since 1993, preserving charter schools' waiver from Title 20

requirements in the Charter Schools Act of 1998, which repealed

and replaced the 1993 law, as well as in all subsequent amendments

to the Charter Schools Act of 1998, including the Charter Systems

Act of 2007.[5]

(b)    Plaintiffs argue that the Charter Schools Acts of 1993 and

1998 are irrelevant to their Impairment Clause claims because it

was the 2007 Charter Systems Act, not the 1993 or 1998 laws, that

---

[5] The FDA's reference to a right to "continued employment" does not undermine the conclusion that the FDA has allowed teachers to earn only qualified rights since the enactment of the 1993 Charter Schools Act. By way of background, in 2000, the FDA was amended to state that "[a] person who first becomes a teacher on or after July 1, 2000, shall *not* acquire any rights under this Code section to continued employment with respect to any position as a teacher." Ga. L. 2000, pp. 618, 720, § 72 (emphasis supplied). In 2003, however, this provision of the FDA was amended to provide that "[a] person who first became a teacher on or after July 1, 2000, *shall* acquire rights under this Code section and Code Section 20-2-941 to continued employment as a teacher." Ga. L. 2003, p. 896, § 2 (emphasis supplied). This provision is now codified at OCGA § 20-2-942 (d) ("A person who first became a teacher on or after July 1, 2000, shall acquire rights under this Code section to continued employment as a teacher."). As the language of these different versions of this statutory provision shows, any right to "continued employment" afforded by the FDA is at most a right to continued employment specified "under this Code section." And determining what rights to continued employment a teacher earns "under this Code section" requires us to read the provisions of the FDA in their statutory and historical context, as we have done above. Because the 1993 Charter Schools Act qualified any rights teachers might have otherwise been able to earn under the FDA, as described above, any right to "continued employment" afforded by the FDA would be similarly qualified.

21

"authorized the stripping of Barnes's FDA rights." But although Plaintiffs assert that the Charter Systems Act of 2007 "operate[s] differently" than the Charter Schools Acts, they fail to explain why the waiver provision of the 2007 law operates differently than its statutory predecessors, such that it further limits the already qualified FDA rights teachers have earned since the 1993 Charter Schools Act's passage.

The only argument Plaintiffs raise that is specific to this point is that "a teacher earns [FDA] rights system-wide," and a waiver of Title 20 requirements under the Charter Systems Act "extinguish[es]" FDA rights "as to all schools in the system," whereas, after a teacher's individual school converts into a charter school and obtains a Title 20 waiver under the Charter Schools Act, the teacher could still enforce his or her FDA rights against noncharter schools within the teacher's school system. This argument, however, rests on the erroneous assumption that the FDA affords teachers a right to work in a school district that includes at least one noncharter school, against which their earned

22

FDA rights are enforceable. There is no support for that assumption. Indeed, Georgia law has permitted public school systems to be composed entirely of charter schools since 1993, as neither the 1993 Charter Schools Act nor the 1998 Charter Schools Act imposed any limits on the number of individual schools within a school district that could undergo charter-school conversion. See Ga. L. 1993, pp. 1440, 1442, § 1 ("Any local school may petition the state board for charter school status . . . ."); Ga. L. 1998, pp. 1080, 1085, § 3 (addressing the conditions under which "[t]he state board may grant a charter to a charter petitioner," none of which concerned the number of charter or noncharter schools in the school system). Thus, even assuming that teachers could have earned a right under the FDA to work in a district with at least one noncharter public school before the Charter Schools Act of 1993 was enacted, that right would have been "extinguished" by the 1993 Act, not the Charter Systems Act of 2007. See Ga. L. 1993, pp. 1440, 1445, § 3 ("All laws and parts of laws in conflict with this Act are repealed.").

Plaintiffs' other arguments fail to explain why the Charter

23

Systems Act's waiver provision limits teachers' earned FDA rights more than the Charter Schools Act's waiver provision. For example, Plaintiffs highlight differences in how the charter-conversion process works under the Charter Schools Act and the Charter Systems Act, arguing that "the Charter Schools Act authorizes start-up and conversion charter *schools*," whereas "[t]he Charter Systems Act . . . authorizes *public school systems* to become 'charter systems.'" (Emphasis in original.) They also argue that there are differences in how charter schools and charter systems are "operated and managed," stating that a charter school authorized by the Charter Schools Act "is operated by a private non-profit corporation and is under the supervision and direction of that corporation's board of directors," whereas a charter system authorized by the Charter Systems Act "is a public school system that remains operated and managed by its elected board of education."

These arguments, however, do not show that the Charter Systems Act of 2007 changed the nature or operation of the statutory waiver previously granted by the Charter Schools Acts of 1993 and

24

1998. As noted above, the Charter Systems Act was not a standalone piece of legislation, but rather an amendment to the Charter Schools Act of 1998. See Ga. L. 2007, p. 185 (noting that the Charter Systems Act was an act "[t]o amend Article 31 of Chapter 2 of Title 20 of the Official Code of Georgia Annotated, relating to charter schools"). And the Charter Systems Act did not modify the Charter Schools Act's grant of a waiver to individual charter schools, amending the language of the waiver provision only to account for the new system-conversion procedure created by the Act and to clarify that individual charter schools would remain exempt from Title 20's requirements regardless of how they became charter schools. Specifically, before the Charter Systems Act authorized the conversion of entire school systems into charter systems, the Charter Schools Act granted a waiver to individual charter schools, stating that "*a charter school* shall not be subject to the provisions of this title." Ga. L. 2005, p. 808, § 12 (emphasis supplied). And the Charter Systems Act retained that waiver for individual charter schools, including those that obtained charter-school status through

25

the new system-conversion procedure created by the Act, stating that "*a charter school, or for charter systems, each school within the system*, shall not be subject to the provisions of this title," and that "[a] waiver granted pursuant to this Code section for a charter system shall apply to *each system charter school within the system*." Ga. L. 2007, p. 191, § 8 (emphasis supplied).

3.    Because both the Charter Schools Act and the Charter Systems Act granted charter schools a waiver from Title 20's requirements, and because the Charter Systems Act simply revised the language of the waiver provision to account for the existence of charter schools that had obtained their charter status through the new system-conversion procedure authorized by the Act, the Charter Systems Act did not materially change the nature or operation of the waiver. And because, as explained above, the 1993 Charter Schools Act clarified that the FDA did not afford teachers who accepted a fourth consecutive school year contract from the same local board any rights to FDA protections that were enforceable against charter schools, the Charter Systems Act's

26

retention of an FDA exemption for charter schools did not impair any right afforded to teachers who earned FDA rights after the enactment of the 1993 Charter Schools Act.

The trial court therefore erred in denying State Defendants' renewed motion to dismiss for failure to state a claim, granting Plaintiffs' motion for summary judgment, and denying Local Defendants' cross-motion for summary judgment.

*Judgment reversed. All the Justices concur, except Pinson, J., disqualified.*

Decided February 20, 2024.

Charter Schools Act; constitutional question. Fulton Superior Court. Before Judge Edwards.

*Christopher M. Carr, Attorney General, Bryan K. Webb, Deputy Attorney General, Russell W. Willard, Senior Assistant Attorney General, Susan R. Haynes, Kristen L. Settlemire, Assistant Attorneys General; Stephen J. Petrany, Solicitor-General, Ross W. Bergethon, Deputy Solicitor-General*, for appellants (case no. S23A0821).

*Pereira Kirby Kinsinger & Nguyen, Brian C. Smith*, for appellants (case no. S23A0822).

*Goodmark Law Firm, Craig L. Goodmark; Gerald R. Weber, Jr.; Philip A. Hostak*, for appellees.